25 S.W.3d 402 (2000)
In the Interest of P.J.H., K.L.H., H.R.H. and H.R.H.
No. 2-00-002-CV.
Court of Appeals of Texas, Fort Worth.
August 10, 2000.
*403 John M. Hall, Weatherford, for appellant.
Patricia H. Gieger, Weatherford, for appellee.
PANEL B: LIVINGSTON and HOLMAN, JJ.; and DAVID F. FARRIS, J. (Retired Sitting by Assignment).

*404 OPINION
TERRIE LIVINGSTON, Justice.

Introduction
Appellant Patrick Harbold appeals an order modifying a final divorce decree increasing his child support payments from $1632 to $1800 per month. He argues in three points that the trial court abused its discretion in finding he was underemployed and that his potential earning capacity justified the increase.[1] Because the trial court did not act arbitrarily or unreasonably, we hold it did not abuse its discretion. We overrule appellant's three points and affirm the judgment of the trial court.

Factual Background
On March 21, 1997, appellant and appellee Kimberly Harbold, parents of four minor children, divorced pursuant to an agreement. Appellant was ordered to pay $1632 in child support with additional annual increases, the amount of which depended upon the cost of the children's medical insurance premiums paid by appellee.
On October 9, 1998, appellee filed a motion to modify appellant's child support payments. At the time of the divorce in 1997, appellant had worked for the City of Weatherford as a fireman for eleven years and for CSSI, a communications company, for eight or nine years. Three weeks before the modification hearing, appellant quit his job at CSSI for "personal and ethical reasons." At about the same time, however, appellant's current wife, Lorie, purchased H & F Communications d/b/a/ Radio Rental Service, a business providing services similar to CSSI. Although held in Lorie's name, evidence elicited at trial suggests H & F is in fact appellant's business. Appellant concedes that Lorie has no experience in the field, that they decided "together" to purchase the business, and that when called, the phone at H & F forwards the calls to appellant's personal cellular phone and the message begins, "Hi, this is [appellant] with Radio Rental Service."
Since the divorce, appellant has also built a home, purchased a boat worth $33,000, a truck worth $33,000, and equipment worth almost $50,000. Appellant also deposited more than $167,000 into his bank after the divorce.[2]
Appellant and appellee each claim the other threatened legal action; appellant testified appellee promised to "make [his] life miserable," while appellee testified appellant continually threatened to quit his job at CSSI and promised to increase his support obligations only "[o]ver his dead body." After hearing this testimony, the trial court ordered appellant to pay $1800 per month and made several factual findings, including:
7. [Appellant's] net resources did increase for the period beginning March 1, 1998.
....
9. [Appellant] did not fulfill his obligation under the Decree of Divorce and did not voluntarily increase his support as agreed and ordered pursuant to the Decree of Divorce.
....
11. The circumstances of the children or a person affected by the order have materially and substantially *405 changed since the rendition of the Decree to be modified as follows:
[Appellant's] net resources have increased.
[Appellee's] expenses for the children have increased.
[Appellant's] expenses decreased. [Appellant's] assets have increased.
....
19. [Appellant] voluntarily quit his job at CSSI on or about July 1, 1999.
....
21. [Appellant] purchased a business in June, 1999, in his wife[`]s name to conduct similar business practices as were conducted at CSSI.
....
23. The amount of child support payments per month that are computed if the percentage guidelines of Section 154.125 of the Texas Family Code are applied to the first $6,000 of [appellant's] net resources for the period beginning June 1 and thereafter, as testified to by [appellant], would be $790.
....
24. Without further reference to the percentages recommended by the guidelines, the Court finds that additional amounts of child support in the total amount of $1800 per month beginning June 1, 1999 and thereafter are required based upon [appellant's] voluntary underemployment at the time of the trial, potential and past earning capacity of [appellant], and all financial resources available for the support of the children.
....

Standard of Review
The trial court is accorded broad discretion in setting and modifying child support payments and, absent a clear abuse of discretion, the trial court's order will not be disturbed on appeal. See DuBois v. DuBois, 956 S.W.2d 607, 610 (Tex.App.Tyler 1997, no pet.); Stocker v. Magera, 807 S.W.2d 753, 754 (Tex.App.-Texarkana 1990, writ denied). In deciding whether a trial court has abused its discretion, we must determine whether the court acted without reference to any guiding rules and principles, i.e., arbitrarily or unreasonably. See DuBois, 956 S.W.2d at 610; Tucker v. Tucker, 908 S.W.2d 530, 532 (Tex.App.-San Antonio 1995, writ denied). In making that determination, we must view the evidence in the light most favorable to the trial court's actions and indulge in every legal presumption in favor of the judgment. See DuBois, 956 S.W.2d at 610. If there is some probative and substantive evidence to support the judgment, the trial court did not abuse its discretion. See id. (citing Holley v. Holley, 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied)). We will not revise the trial court's judgment merely because we consider the amount of the child support award either too high or too low. See Eggemeyer v. Eggemeyer, 535 S.W.2d 425, 427 (Tex.Civ.App.-Austin, 1976) aff'd, 554 S.W.2d 137 (Tex.1977).

Discussion and Conclusion
In his first point, appellant argues the trial court abused its discretion by finding appellant was underemployed. Because appellant has four children, the guidelines suggest appellant pay 35% of the first $6000 of his monthly net resources toward the support of his minor children. See Tex. Fam.Code Ann. § 154.125 (Vernon 1996). However, section 154.066 of the Family Code provides that a trial court may order a parent to pay child support beyond the amount his actual income would ordinarily indicate under the guidelines if the parent could potentially earn more money but has intentionally chosen not to. See Tex. Fam.Code Ann. § 154.066 (Vernon 1996); Reyes v. Reyes, 946 S.W.2d 627, 629 (Tex.App.-Waco 1997, no writ). In order for a court to find that a parent is intentionally underemployed or unemployed under section 154.066, there must be evidence the parent reduced his income for the purpose of decreasing his child support payments. *406 See DuBois, 956 S.W.2d at 610. There is no presumption that simply because a parent is no longer as lucratively employed as he was during his marriage, he is intentionally underemployed or unemployed. See id. The requisite intent or lack thereof, however, may be inferred from such circumstances as the parent's business reversals, business background, and earning potential. See id. (citing Kish v. Kole, 874 S.W.2d 835, 839 (Tex.App.-Beaumont 1994, no writ)). At the same time, we must keep in mind a parent's right to pursue his or her own happiness. See id.
In this case, appellee testified that appellant continually threatened to quit his job at CSSI, which he had held for at least eight years. When he did in fact quit, he purchased another company engaged in similar work, but placed that company in his current wife's name. Although appellant disagrees with portions of his ex-wife's rendition of the facts, the fact finder is the sole judge of the credibility of witnesses and may decide whether to believe one witness rather than another. See McCain, 980 S.W.2d at 802. From the evidence submitted at trial, the trial court could reasonably have determined that appellant continued to work two jobs, and that he intentionally sought to conceal one of those jobs from the court, hoping to insulate the profits H & F may eventually yield.
At trial, appellant conceded, however, that while he made over $40,000 in 1997 at CSSI, he currently earns nothing at H & F. By quitting CSSI, appellant substantially reduced his annual income while continuing to maintain two separate jobs. Hence, the court could reasonably have concluded appellant could earn considerably more money had he either kept his position with CSSI or sought employment with a business that would pay him a salary. We cannot say the trial court abused its discretion in holding appellant was intentionally underemployed. We overrule appellant's first point.
In his second and third points, appellant argues his earning potential does not justify a support obligation of $1800 per month. However, appellant's duty to support his children is not limited to his ability to pay from his current earnings, but also extends to his financial ability to pay from any and all sources that might be available to him. See In re Striegler, 915 S.W.2d 629, 638 (Tex.App.-Amarillo 1996, writ denied).
Since the divorce, appellant has acquired several assets worth well over $100,000. Considering the testimony at trial suggesting appellant continues to hold two jobs, together with the evidence of his earning potential, expenditures, and recently accumulated assets, we find the trial court's increase of appellant's support obligation to $1800 per month to be reasonable. See id. We overrule appellant's final two points.
Because there is sufficient probative and substantive evidence to support the trial court's findings and judgment, we cannot say the trial court acted arbitrarily or unreasonably. Thus, there is no abuse of discretion. We affirm the trial court's judgment.
NOTES
[1] Appellant phrases his points as challenging the factual sufficiency of the evidence. However, factual sufficiency is not an independent ground for review, but is only a relevant factor in assessing whether the lower court abused its discretion. See McCain v. McCain, 980 S.W.2d 800, 801 n. 1 (Tex.App.-Fort Worth 1998, no pet.); D.R. v. J.A.R., 894 S.W.2d 91, 95 (Tex.App.-Fort Worth 1995, writ denied) (op.on.reh'g).
[2] We note appellant's attorney attempted at trial to show many of these deposits were in fact originally drawn from appellant's other bank accounts. However, we also note that appellant produced no documentation to support that theory.