Opinion issued May 1, 2008









 





In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-06-00634-CV
  __________
 
MICHAEL MCLANE, Appellant
 
v.
 
SANDRA HELENE MCLANE, Appellee
 
 

 
 
On Appeal from the 309th District Court
Harris County, Texas
Trial Court Cause No. 2002-47785A
 

 
 
OPINION ON REHEARING
          Michael McLane filed a motion for en banc rehearing. We withdraw our
opinion and judgment of December 20, 2007 and issue the following in their stead. 
We dismiss the motion for en banc rehearing as moot.
           Michael McLane appeals the trial court’s decision modifying his child support
payments. In two issues, Michael complains of the trial court’s finding that he was
intentionally underemployed and its refusal to retroactively award a decrease of child
support.


 We affirm.  
Background
          In July 2003, after 10 years of marriage, Michael and Sandra McLane divorced. 
As agreed upon, Sandra was awarded primary custody of SMM, their adopted son
who was born on September 11, 1996. Michael, who is a licensed attorney, agreed
to pay $800 each month in child support. Less than four months later, Michael filed
a variety of motions that, among other things, sought a reduction in his child support
payments.



          Two years later, there was a one-day bench trial on Michael’s claims for a
reduction in child support, and, on December 10, 2005, the associate judge issued the
following report:
Modification granted. [Child support] reduced to $628.55/mo
[beginning] December 15, 2005. [Michael] is underemployed.
[Michael’s] request for retroactive reduction is denied. [Michael] has an
earning capacity of at least $48,000/yr as a wage earner.

Michael appealed the intentional-underemployment ruling to the referring court,


 and,
on May 5, 2006, the presiding judge affirmed the associate judge’s report. The trial
court filed the following Findings of Fact and Conclusions of Law:
          FINDINGS OF FACT
The court finds that Michael McLane is intentionally underemployed
and has an earning capacity of at least $48,000.00 a year. The
application of the guidelines to gross resources of $48,000.00 a year
provides a child support award of $628.55 per month.
 
Michael McLane graduated from South Texas College of Law in 1995,
was licensed to practice law in Texas in 1996, is licensed to practice in
the US District Court, Southern District of Texas, has practiced law over
nine years and has been licensed, has received training or has worked as 
a realtor, insurance salesman, financial planner and social worker.

          CONCLUSION OF LAW
 
Guideline support is presumed to be reasonable and in the best interest
of the child.
 
A court may apply the support guidelines to the earning potential of the
obligor.

The trial court filed additional findings as follows:
 
FINDINGS REQUIRED BY SECTION 154.130 OF TEXAS FAMILY
CODE
 
The application of the guidelines to the earning potential of the obligor
is not unjust or inappropriate.
 
The monthly net resources of the obligor’s earning potential per month
are $3,142.75.
 
The monthly net resources of the obligee per month are minimal.
 
The percentage applied to the obligor’s potential net resources for child
support by the actual order rendered by the court is 20%.
 
The amount of child support if the percentage guidelines are applied to
the obligor’s net resources is $628.55.

Michael appeals the trial court’s decision. 
       Intentional Underemployment
          Michael argues that the trial court erred in finding that he was intentionally
underemployed because (1) there was no evidence of acts to avoid the responsibility
to pay child support, (2) his income after the divorce has not decreased, and (3) there
were no findings of fact or conclusions of law made by the trial court that support the
conclusion that he is intentionally underemployed.


 We disagree.
Standard of Review
           The trial court is accorded broad discretion in setting and modifying child
support payments and, absent a clear abuse of discretion, the trial court’s order will
not be disturbed on appeal. Tex. Fam. Code Ann. § 156.402(b) (Vernon 1996);
Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); McGuire v. McGuire, 4
S.W.3d 382, 387 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The trial court’s
primary consideration in determining the merits of a request for the modification of
child support payments is the best interest of the child. Lenz v. Lenz, 79 S.W.3d 10,
14 (Tex. 2002). 
          A trial court abuses its discretion when it acts in an arbitrary and unreasonable
manner or when it acts without reference to any guiding rules or principles. Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985). Under the
abuse of discretion standard, we review the evidence in the light most favorable to the
order and indulge every presumption in favor of the trial court’s order. See Walker
v. Packer, 827 S.W.2d 833, 839–40 (Tex. 1992); Holley v. Holley, 864 S.W.2d 703,
706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). If some probative and
substantive evidence supports the order, there is no abuse of discretion. Whitworth
v. Whitworth, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no pet.). 
The Law
          Chapter 154 of the Texas Family Code establishes a multiple-step process for
determining the amount of child support. The trial court must first determine the
parties’ gross income, net income, and monthly net resources. And, each party is
required to furnish information sufficient to identify the party’s net resources and
ability to pay support, such as production of copies of income tax returns, financial
statements, and pay stubs. After determining the amount of net resources, the trial
court must decide whether to apply the child support guidelines or whether
application of the guidelines would be unjust or inappropriate. See Tex. Fam. Code
Ann. §§ 154.001–.309 (Vernon 2002 & Supp. 2007). Importantly, a parent’s child
support obligation is not limited to that parent’s ability to pay from current earnings; 
rather it extends to his or her financial ability to pay from any and all available
sources. See In the Interest of Striegler, 915 S.W.2d 629, 638 (Tex. App.—Amarillo
1996, writ denied).
          Further, a trial court may order a parent to pay child support beyond the amount
the parent’s income would ordinarily indicate under the guidelines if the parent could
potentially earn more money but has intentionally chosen not to. See Tex. Fam.
Code Ann. § 154.066 (Vernon 2002) (intentional underemployment or
unemployment). If the actual income of the obligor is significantly less than what the
obligor could earn because of intentional unemployment or underemployment, the
court may apply the support guidelines to the earning potential of the obligor. Tex.
Fam. Code Ann. § 154.066. “A parent who is qualified to obtain gainful
employment cannot evade his support obligation by voluntarily remaining
unemployed or underemployed.” Tenery v. Tenery, 955 S.W.2d 337, 340 (Tex.
App.—San Antonio 1997, no pet.). In order to find a parent intentionally
underemployed, the evidence must show that the parent reduced his income for the
purpose of decreasing his child support payments. In re P.J.H., 25 S.W.3d 402,
405–06 (Tex. App.—Fort Worth 2000, no pet.). The requisite intent may be inferred
from such circumstances as the parent’s education, economic adversities, business
reversals, business background, and earning potential. In re Davis, 30 S.W.3d 609,
617 (Tex. App.—Texarkana 2000, no pet.); In re P.J.H., 25 S.W.3d at 406. At the
same time, the court must keep in mind a parent’s right to pursue his or her own
happiness. Zorilla v. Wahid, 83 S.W.3d 247, 253 (Tex. App.—Corpus Christi 2002,
no pet.); DuBois v. DuBois, 956 S.W.2d 607, 610 (Tex. App.—Tyler 1997, no pet.). 
Once the obligor has offered proof of his current wages, the obligee bears the burden
of demonstrating that the obligor is intentionally underemployed. Zorilla, 83 S.W.3d
at 253; DuBois, 956 S.W.2d at 610. Intentional underemployment has been construed
to mean a “voluntary choice by the obligor.” In re D.S., 76 S.W.3d 512, 520 (Tex.
App.—Houston [14th Dist.] 2002, no pet.); Baucom v. Crews, 819 S.W.2d 628, 633
(Tex. App.—Waco 1991, no writ.) (affirming modification where trial court found
that obligor voluntarily became underemployed). 
Analysis
          Both Michael and Sandra testified at the original hearing before the associate
judge and during the appeal to the trial court. They each represented themselves pro
se, and the trial court had access to the record of the first proceeding. Although the
trial court granted Michael’s motion and reduced his child support to $628.55 per
month, Michael had sought a greater reduction, from the $800/month support he had
originally agreed to down to $303.77/month. He argued that, based on his actual
income, the guidelines provide that his monthly support should have been $297.83
for 2003, $342.33 for 2004, and $271.15 for 2005, which yield an average of
$303.77. 
          Michael testified that, at the time of the divorce in 2003, he had agreed to the
$800 per month payments based on his “historical payment of excess income” to his
wife for the previous 10 years. Despite that agreement, however, Michael testified
that, in reality, he was nearly bankrupt and was in the process of preparing a
bankruptcy petition at that time. He testified that a friend had convinced him not to
go through with filing the petition. Michael also testified that, although he initially
moved to modify the payments in 2003, more than two years before the original
proceeding on his motion, he did not have adequate funds to analyze his finances and
go forward with the motion until 2005. Michael testified that he did not know the
exact amount of his income at the time of his divorce proceedings and only recently
became aware of his actual financial status, after he hired an accountant to review his
records. 
          Michael presented the court with a document entitled “Trend Analysis of Self-Employment Income,” which he represents states his annual net income from 1995
to 2005. Michael testified that this typewritten document, which contains one entry
in handwriting, reflects that his net income was trending upward from a $4,907 loss
in 2002 (at the time he began paying $750 to $800 per month in child support) to an
estimated $19,921.87 of positive earnings in 2004, not downward after his divorce. 
          Michael testified that the net income amounts in the analysis are supported by
his federal income tax and social security statements.


 However, Michael only
offered into evidence his tax statements for the years 2002, 2003, and 2004, the time
period shortly before and after the divorce. These statements are dated December 4,
2005, the day before the original hearing, and Michael testified that he had 
completed them just the night before. 
          Although he reports as personal income amounts less than what was found by
the trial court, these statements also reflect that, as the sole proprietor of his law firm,
Michael reported a gross income between $50,000 and $60,000 per year. Michael did
not provide any verifiable supporting documentation regarding the business expenses
and deductions he claims reduced his yearly net resources to an amount below the
amount found by the trial court.


 At the appeal to the trial court that was held over
two months later, there was no testimony from Michael that the income tax statements
for 2002, 2003, and 2004, which also state that he owes more than $12,000 and
$14,000 in back taxes and penalties, had been filed with the Internal Revenue Service
(“IRS”) as of the time of trial or about what arrangements, if any, he had made with
the IRS for the payment of those taxes and penalties.
          Michael testified that he has been self-employed for more than nine years, and
he has chosen to “remain self-employed rather than be controlled by someone else’s
morals.” He has been unable to grow his business because he (1) has had to spend
a lot of time defending “false claims of child abuse,” (2) has had to forgo cases in
remote counties due to the cost of gas, and (3) prefers to be available to attend
SMM’s school events. He testified that he has gotten only two jobs in the last few
years—one as a “game representative helping people” at Astroworld on the
weekends, but that job ended when Astroworld closed in September 2005, and the
other with a law firm, where he was making $25/hour. One month after he started
with the law firm, “in the chaos following Hurricane Rita he was terminated against
his will and he continued working for himself since then.” Michael testified that he
did not have the income necessary to pay the existing child support and paying his
support obligations has required him to forgo paying some of his creditors, and he
could no longer tithe to his church. He had even applied for food stamps. Although
Michael testified that he has chosen to remain self-employed for personal reasons, he
also testified that he has applied for 14 legal jobs since the time of divorce and had
only obtained the one job with a law firm paying $25 per hour.  
          Michael presented evidence from his clients, Tanya Stafford and Linda Kelly
in an attempt to establish that Sandra was hindering his efforts to develop his practice. 
Stafford and Kelly both testified that they had received angry telephone calls from
Sandra. During the telephone call, Stafford identified herself as one of Michael’s
clients, and Sandra explained that she was calling numbers from a telephone bill that
had been sent to her. Sandra did not call back. Kelly, however, testified that she had
known Michael for years and had socialized with Michael and Sandra when they were
a couple. She said that she had received a call from Sandra during which Sandra “bad
mouthed” Michael and remarked that he was an incompetent lawyer. Sandra testified
that she did not know that Kelly was Michael’s client. Kelly acknowledged, at trial,
that she did not tell Sandra that she was Michael’s client. Sandra explained that she
was calling Kelly as a friend to let her know not to send a joint Christmas card to the
McLanes, and, after this conversation, Sandra did not call her again. 
          Ralph Rieger, Michael’s accountant, testified that he reviewed financial
documents that Michael had provided to him and that he prepared the trend analysis
based on those documents. He testified that, based on this analysis, Michael’s current
income was “right in line” with his average income.


 
          Sandra testified that it would not be in SMM’s best interest for her to hurt
Michael’s practice. She noted that, in November 2002 prior to the divorce becoming
final, Michael agreed to pay $750/month in child support, and then in June 2003, he
agreed to pay $800/month.
          In this case, despite Michael’s argument to the contrary, there was probative
evidence to support the trial court’s conclusion that he was intentionally
underemployed. First, there was undisputed evidence that Michael’s education and
expertise enable him to obtain more lucrative employment if he wanted to do so. The
evidence supports the court’s factual findings in its order that Michael 
graduated from South Texas College of Law in 1995, was licensed to
practice law in Texas in 1996, is licensed to practice in the US District
Court, Southern District of Texas, has practiced law over nine years and
has been licensed, has received training or has worked as a realtor,
insurance salesman, financial planner and social worker. 

The court also heard evidence that Michael’s practice areas include family law,
bankruptcy, and criminal defense, and that the year Michael graduated from law
school, more than 10 years ago, he received an income of approximately $44,000 a
year. 
              There is also evidence from Sandra that supports the conclusion that Michael
became underemployed after his divorce with the intent of reducing his child support
obligations. Contradicting his testimony, Sandra testified that Michael has taken
lower paying jobs to reduce the amount of child support payments because he
considers these payments as additional personal income to Sandra that he does not
want to pay. At trial, Sandra testified as follows:
Your Honor, I believe that Mr. McLane is purposefully underemployed
and that he chooses to be so because he does not want to give me money
to help me financially take care of our son. He does not see this as child
support. He sees it as personal income to me. As a matter of fact, he
said that to me last Monday, on November 18th. His exact words to me
were, What I am giving you is second income to you. But, Your
Honor, it is not income to me. That would be alimony. This is child
support to help support our son.

          Given the caustic nature of the McLanes’ divorce proceedings and the trial
court’s firsthand knowledge of the history of this case, we cannot conclude that it was
unreasonable for the trial court to credit Sandra’s testimony as true. The record
reflects that, during and after the divorce proceedings, Michael has blamed Sandra for
coaching SMM to continually make out-cry allegations of abuse against him to
Children’s Protective Services (“CPS”). Michael believes that Sandra has been trying
to ruin his legal reputation with his clients. The record also reflects that the McLanes
are so bitter toward one another that, as recently as October of 2007, they were still 
unwilling to put aside their differences even when confronted with the obvious fact
that they were harming SMM. An example of the acrimonious nature of this
relationship is revealed in the transcript from the October 26, 2007 hearing conducted
by the trial court to give the CPS investigator an opportunity to update the court on the
status of SMM’s mental and physical health. During the hearing, the trial court made
the following observations about Michael’s and Sandra’s continuing animosity toward
each other:
Well, the Court has told [Michael and Sandra] on numerous occasions. 
If I could undo an adoption, that adoption would be undone so quickly. 
I’ve actually done research to see what authority I have to undo an
adoption. Unfortunately, I have none. I think it’s tragic that this child
was adopted. 
 
          . . . 
 
Then I’m going to remind you once again the tragedy of this child and
what you-all are doing. I begged you, begged you to try to do the right
thing for this child, to put your own selfish needs, you know, put them
aside and try real hard to work for this child. I’ve actually—I beg you
again and again, I think it’s a tragedy that you-all adopted this child,
tragic for his life, but I can’t undo that. And you have, I think, a legal
obligation, a moral obligation, you’re going to have to answer to a Judge
far more significant than me at the end of your life on how you treated
this child entrusted in your care. And that Judge has far more powers
than I have.
 
At the hearing, a caseworker from CPS, Emerald Ealy, testified that, in the past year,
CPS has conducted between 15 - 20 investigations relating to SMM. She testified that
she has seen no evidence of physical abuse, but SMM says that his father is abusing
him, and she does not believe that SMM is making false allegations. Ealy testified that
SMM is emotionally traumatized with so much “back and forth” between his parents,
and she recommended that he be removed from their homes until the conflict between
the parents is resolved. At the conclusion of the hearing, the trial court, sua sponte,
awarded CPS temporary managing conservatorship of SMM.
          Nevertheless, Michael argues that it was an abuse of discretion for the trial court
not to believe his testimony and evidence regarding his financial status, specifically
his evidence that his income has not decreased since the divorce and regarding his
motive for taking lesser paying jobs. He argues that the court erred in making its
decision regarding his underemployment and failing to take into consideration his
right to pursue happiness in his career and spend more time with his child. We
disagree.
              In this case, almost all of the evidence of Michael’s finances before and after
the divorce and his intent regarding the decision not to seek higher paying jobs is
based on the credibility of (1) Michael’s testimony or (2) documents he has created for
purposes of this litigation. Where, as here, the trial court’s decision regarding the
appropriate amount of child support is based, in part, on the credibility of the
witnesses, a matter within the trial court’s purview, we will not disturb that decision
on appeal. See Whitworth, 222 S.W.3d at 623. The trial court is the sole decider of
the candor, demeanor and credibility of the witnesses in this case and it was free to
believe or disbelieve Michael’s testimony. See Tucker v. Tucker, 908 S.W.2d 530, 534
(Tex. App.—San Antonio 1995, writ denied). Contrary to Michael’s assertions, the
trial court was not required to accept the evidence he presented of his income and net
resources as true, especially if it was unsupported by objective evidence that he did not
create himself. Friermood v. Friermood, 25 S.W.3d 758,760 (Tex. App.—Houston
[14th Dist.] 2000, no pet.); Glassman & Glassman v. Somoza, 694 S.W.2d 174, 176
(Tex. App.—Houston [14th Dist.] 1985, no writ) (trial court, as fact finder, may
decline to accept as true the testimony of an interested witness even if uncontradicted). 
Furthermore, the trial court could have inferred Michael’s intent to be underemployed
from his education, business background, and earning potential. See In re Davis, 30
S.W.3d at 617; In re P.J.H., 25 S.W.3d at 406. 
             Because the trial court had knowledge of the case from the time of the divorce
until the modification hearing, it was in a better position than this Court to consider
the evidence of Michael’s credibility regarding his motives and the documents he has
presented to the court. See McGuire v. McGuire, 4 S.W.3d 382, 387 (Tex.
App.—Houston [1st Dist.] 1999, no pet.); Shoemate v. Winkley, 505 S.W.2d 357,
358–59 (Tex. Civ. App.—El Paso 1974, no writ). Thus, given the record in this case,
we hold that the trial court did not abuse its discretion in finding that Michael was
intentionally underemployed and that his potential yearly income was $48,000. We
hold that the record before us does not disclose a clear abuse of discretion, and we
overrule this issue.
Retroactive Award
          Finally, Michael asserts that the trial court erred in denying his request that the
decrease in child support apply retroactively. We disagree.
Standard of Review
          While section 156.401 empowers the trial court to modify support orders
retroactively, the application of the provision is not mandatory, but, rather, is left to
the broad discretion of the trial court. Nordstrom v. Nordstrom, 965 S.W.2d 575, 582
(Tex. App.—Houston [1st Dist.] 1997, writ denied). It is imperative that the trial court
have broad discretion to decide whether all of the facts and circumstances necessitate
and justify a retroactive award of support. Id. Accordingly, we apply here the same
abuse of discretion standard that we previously applied to the court’s finding of
intentional underemployment. See id.
          As noted above, the trial court had before it one day of testimony from
numerous witnesses and several exhibits detailing the circumstances of the parties. 
A review of the record reveals that the court was presented with evidence that would
support its decision to not apply the order retroactively. The record reflects that,
despite his explanations as to the reason, the fact still remains that Michael originally
agreed to child support payments in the amount of $800 per month, and he did not
pursue the motion to modify the support order until more than two years after the
motion had been filed. Furthermore, the trial court heard evidence that this reduction
might cause hardship to SMM. Sandra testified that she is the primary caretaker of
SMM, has negligible net resources, and cannot afford to repay several years of child
support that Michael allegedly overpaid. To justify such an award, the evidence must
directly support a retroactive modification. Id. Here, we hold that it does not, and
therefore, the trial court did not abuse its discretion in denying the modification
request. We overrule this issue.
Conclusion
          We affirm the trial court’s modification order.
 
 
                                                                        George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Justices Taft, Hanks, and Higley.