NUMBER 13-09-00703-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS


 

CORPUS CHRISTI - EDINBURG 


 


IN THE MATTER OF THE MARRIAGE OF AMY LASSMANN 

AND CHARLES A. LASSMANN, JR. AND 

IN THE INTEREST OF C. J. L., A CHILD 

 




On appeal from the 24th District Court 
of Victoria County, Texas.

 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Garza


Memorandum Opinion by Justice Garza



 By one issue, appellant Charles A. Lassmann, Jr., contends that the trial court
abused its discretion when it based his child support obligation on his income-earning
potential prior to his incarceration. We affirm. 

I. Background

 After being released from prison on parole, Charles married Amy Lassmann on
April 29, 2004. Charles later adopted Amy's daughter, C.J., from a prior relationship. (1) In
January of 2009, Charles was incarcerated in the Nueces County Jail for assaulting Amy. 
During his incarceration, Charles's parole was revoked due to the assault on Amy and also
for a driving-while-intoxicated offense. Charles is not scheduled to be released from prison
until 2013.

 On June 22, 2009, Amy filed for divorce. The trial court held a hearing on the
divorce on October 26, 2009. Charles, due to his incarceration, did not attend but was
represented by counsel. At the hearing, the court heard testimony to determine a child
support award for C.J., who was fifteen years old at the time. (2) Amy testified that, prior to
his incarceration, Charles worked at various oil companies as a directional driller earning
$26.00 per hour, and that he earned more when he worked overtime. Amy also testified
that Charles did not own any real property; that creditors repossessed his pickup truck and
motorcycle; and that they had numerous community debts, including $4,000 owed to the
IRS for penalties associated with the tax years 2006 and 2007. 

 Amy asked the trial court to base Charles's child support obligation on his earning
potential--the $26.00 per hour wage he had earned prior to being incarcerated for
committing assault. She argued that this award was appropriate because Charles was
voluntarily "underemployed" by committing an offense which led to his incarceration. 
However, Charles's attorney argued that child support should be based on the federal
minimum wage because Charles was incarcerated prior to the divorce proceedings and
had no income-earning ability or other financial assets, as evidenced by the testimony on
his debts. Charles's attorney further argued that Charles would continue to be incarcerated
until 2013 and claimed that his continued employment as an oil driller was speculative. 

 The trial court granted the divorce and ordered a child support obligation in the
amount of $686.00 per month based upon the $26.00 per hour wage. The trial court
considered, among other things, that predicating child support on Charles's prior earnings
was appropriate because, although Charles was incarcerated five months before Amy
initiated divorce proceedings, "[he] was the one that committed the assault and put himself,
voluntarily, being at the situation where he is at." This appeal followed. 

II. DiscussionA. Standard of Review and Applicable Law

 A trial court has broad discretion to determine child support awards within the
guidelines of the family code. Tex. Fam. Code Ann. § 154.121 (Vernon 2008); Reyes v.
Reyes, 946 S.W.2d 627, 629 (Tex. App.-Waco 1997, no pet.). "However, as the
guidelines are merely advisory, the Code also allows the trial court the discretion to set a
child support order outside the guidelines." Reyes, 946 S.W.2d at 629. An order regarding
child support will not be overturned unless the trial court clearly abused its discretion. 
Rodriguez v. Rodriguez, 860 S.W.2d 414, 415 (Tex. 1993). The test for abuse of discretion
is whether the trial court acted without reference to any guiding rules or principles, or, in
other words, whether the act was arbitrary or unreasonable. See Worford v. Stamper, 801
S.W.2d 108, 109 (Tex. 1990). In this case, the trial court made no findings of fact, and
Charles requested none. See Tex. R. Civ. P. 296, 297. "Therefore, we assume the trial
court found all facts to support the judgment, and we will affirm the judgment if there is any
legal theory supported by the record to justify it." See In re M.M., 980 S.W.2d 699, 700 
(Tex. App.-San Antonio 1998, no pet.) (citing Southwest Livestock & Trucking Co. v.
Dooley, 884 S.W.2d 805, 807-08 (Tex. App.-San Antonio 1994, writ denied)). 

 For purposes of determining child support liability, the trial court shall calculate net
resources, including all wage and salary income and other compensation for personal
services, interest, dividends and royalty income, self-employment income, net rental
income, and all other income actually being received. Tex. Fam. Code Ann. § 154.062(a),
(b) (Vernon Supp. 2009). In the absence of evidence of the wage and salary income of a
party, the court shall presume that the party has wages or salary equal to the federal
minimum wage for a forty-hour week. Id. § 154.068 (Vernon 2008). 

 Section 154.066 of the Texas Family Code provides that a trial court may order a
parent to pay more child support than the guidelines indicate if the parent could potentially
earn more money but has intentionally chosen not to. Id. § 154.066 (Vernon 2008); Reyes,
946 S.W.2d at 629. To make a finding of intentional underemployment or unemployment,
there must be evidence that the parent reduced his income for the purpose of decreasing
his child support payment. See Zorilla v. Wahid, 83 S.W.3d 247, 253 (Tex. App.-Corpus
Christi 2002, no pet.); In re P.J.H., 25 S.W.3d 402, 405 (Tex. App.-Fort Worth 2000, no
pet.). The requisite intent, or lack thereof, to be underemployed or unemployed for the
purpose of determining a child support award may be inferred from such circumstances
as the parent's education, economic adversities, business reversals, business background,
and earning potential. Zorilla, 83 S.W.3d at 253 (citing In re Davis, 30 S.W.3d 609, 617
(Tex. App.-Texarkana 2000, no pet.)). 

B. Voluntary Unemployment

 The issue of whether incarceration can be characterized as "voluntary
unemployment" has been discussed, but never decided, by several appellate courts. See
In re M.M., 980 S.W.2d at 701 n.2; Reyes, 946 S.W.2d at 629; Hollifield v. Hollifield, 925
S.W.2d 153, 156 (Tex. App.-Austin 1996, no writ); see also Slaughter v. Slaughter, No.
13-99-497-CV, 2001 Tex. App. LEXIS 2783, at **6-8 (Tex. App.-Corpus Christi 2001, pet.
denied) (mem. op., not designated for publication). For example, in Hollifield, the Austin
Court of Appeals noted the following:

Appellant also maintains that his incarceration cannot be characterized as
"voluntary." Appellant contends that while he might have intentionally or
voluntarily committed a crime, he hardly intended to get caught or
volunteered to go to prison . . . . Assuming, without deciding, that appellant
was in fact involuntarily unemployed, this fact alone would not require the
trial court to rescind appellant's support obligations. In addition to appellant's
unemployment, the court was entitled to consider the nature of his
crime . . . , the financial status of his children, as well as their special
needs . . . . 

 

925 S.W.2d at 156. (3) 

 Here, the trial court held that Charles was voluntarily unemployed because he
"voluntarily" assaulted Amy. We do not believe, however, that this is a case of voluntary
unemployment because the child support order at issue was not in place at the time
Charles committed the assault. In fact, Charles was incarcerated five months before Amy
filed for divorce, and nine months before the divorce hearing where the child support award
was determined. There is no evidence that Charles had any "intent" to be underemployed
or unemployed for the purpose of decreasing a child support award. See Zorilla, 83
S.W.3d at 253. We hold that the trial court erred by considering voluntary unemployment
as a factor in the determination of Charles's child support obligation. 


C. Other Factors in Child Support Consideration

 Notwithstanding the above analysis, we cannot say that the trial court abused its
discretion when it based the child support order on the $26 per hour wage. Trial courts
consider several factors, not just voluntary unemployment or underemployment, to
determine child support. Notably, section 154.123(b)(17) of the family code allows trial
courts to deviate from the guidelines for "any other reason consistent with the best interest
of the child, taking into consideration the circumstances of the parents." See Tex. Fam.
Code Ann. § 154.123(b)(17) (Vernon 2008). (4) 

 The record here demonstrates that the court considered evidence on other relevant
issues to support the judgment. Hollifield, 925 S.W.2d at 156; see Tex. Fam. Code Ann.
§ 154.123 (Vernon 2008) (delineating seventeen additional factors courts should consider
in determining child support). For example, the court heard that Charles: (1) was an
experienced directional driller who had worked for several drilling companies in the area;
(2) regularly worked overtime as a driller, which supplemented his income; (3) earned
similar wages at all of the drilling companies for which he had worked; and (4) was
scheduled to be released from prison in 2013. We note that the court pointed out to Amy
that she would be able to "enforce child support when [Charles] gets out." The ability to
collect an arrearage is a recognized consideration in child support cases. In re M.M., 980
S.W.2d at 701; see also Slaughter, 2001 Tex. App. LEXIS 2783, at *8. "[A]lthough [the
obligor] may not be able to make support payments now, the assessment makes it possible
. . . to collect arrearages, should his financial condition improve in the future." In re M.M.,
980 S.W.2d at 701. We also note that C.J. was nearly sixteen at the time of the hearing. 
The trial court could have considered that Charles's support obligation would be limited to
two years only, when C.J. reached the age of majority. All of these factors supported the
court's child support award for C.J. Id. at 700. 

 Charles argues his child support obligation "should be based upon a [forty] hour
work week at the federal minimum wage because [the] evidence presented shows that
[Charles] is incarcerated . . . , has no employment or earning ability, has no assets, and is
in debt." In other words, Charles claims that he is not "actually receiving" any income upon
which to base a child support order. See Tex. Fam. Code Ann. § 154.062(b)(5) (Vernon
Supp. 2009). However, although trial courts may presume that a party earns the minimum
wage for a forty-hour work week in the absence of evidence regarding an obligor's
resources, see id. § 154.068 (Vernon 2008), here there was testimony regarding Charles's
earning potential. (5) Courts may take a parent's earning potential into account when
determining the amount of child support the parent must pay. See generally Pharo v.
Trice, 711 S.W.2d 282, 284 (Tex. App.-Dallas 1986, no writ); Wetzel v. Wetzel, 514
S.W.2d 283, 285 (Tex. Civ. App.-San Antonio 1974, no writ). "The duty to support is not
limited to a parent's ability to pay from current earnings, but extends to his or her financial
ability to pay from any and all sources that might be available." Pharo, 711 S.W.2d at 284. 
In light of the foregoing, the trial court was under no obligation to resort to the minimum
wage presumption in the family code. (6) 

 We cannot conclude that the trial court abused its discretion when it based
Charles's child support obligation on the $26.00 per hour wage he earned prior to his
incarceration. The issue of voluntary unemployment aside, there are facts in the record
to support the trial court's award, and we must affirm the judgment if there is any legal
theory in the record to support it. See In re M.M., 980 S.W.2d at 700. The trial court had
broad discretion to set aside the advisory guidelines in the Texas Family Code to
determine Charles's child support obligation, and we conclude that the more generous
award was in C.J.'s best interests. We overrule Charles's sole issue.

III. Conclusion

 We affirm.

 

 

 __________________________ 

 DORI CONTRERAS GARZA

 Justice


Dissenting Memorandum Opinion 

by Justice Linda R. Yañez.


Delivered and filed the

25th day of August, 2010.

 



1. 

2. Amy testified that C.J. would turn sixteen in December of 2009.
3. 
 
 - 
 - 
 
 
4. The dissent overlooks this provision which gives the trial court broad discretion in determining child
support awards.
5. The dissent holds that Charles's $26 per hour earning potential should not be considered "evidence,"
as we have determined that Charles was not voluntarily unemployed. This lack of evidence, they argue,
should therefore trigger the minimum wage presumption in section 154.068. See Tex. Fam. Code Ann. §
154.068 (Vernon 2008). However, we find no authority to support the contention that earning potential should
only be considered in cases of voluntary unemployment. 
6. We also note that there is no legal presumption that an inmate has no assets. See In re A.P., 46
S.W.3d 347, 359 (Tex. App.-Corpus Christi 2001, no pet.); see also Koenig v. DeBerry, No. 03-09-00252-CV,
2010 Tex. App. LEXIS 1926, at **15-16 (Tex. App.-Austin Mar. 17, 2010, no pet.) (mem. op.). Such a
presumption "would not be in the best interests of children and parents seeking child support." In re M.M.,
980 S.W.2d 699, 700 (Tex. App.-San Antonio 1998, no pet.) (citing Reyes, 946 S.W.2d at 630).