

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-09-162-CV**

IN THE INTEREST OF E.A.E., O.E.,
C.B.E., C.E., C.E., AND C.E.,
CHILDREN

------------

FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY

------------

# MEMORANDUM OPINION[1]

------------

This is an appeal from the trial court's denial of appellant Noble Ezukanma's motion to reduce child support for his six children. In four issues, appellant contends that (1) the trial court abused its discretion by denying his motion to reduce child support because he had been "terminated from his practice, sued for malpractice, and had been unable to generate virtually any income in his attempt to start his new practice," (2) the evidence is legally and factually insufficient to support the trial court's finding that there was not a

---

[1]*See* Tex. R. App. P. 47.4.

material change in appellant's circumstances warranting a reduction, (3) the evidence was legally and factually insufficient to support the finding that reduction of support would not be in the children's best interest when the child support was already above statutory guidelines, and (4) appellant conclusively established a material change in circumstances warranting a reduction. We affirm.

## Factual and Procedural Background

After appellant and appellee Lawreta Njideka Ezukanma were divorced, in a subsequent suit to modify the parent-child relationship, the trial court ordered appellant to pay $5,400 per month in child support on the first day of each month. In June 2008, the Tarrant County Domestic Relations Office IV-D Child Support Monitoring Program (DRO) on behalf of appellee the Attorney General of Texas filed a motion to enforce asking that appellant be held in contempt for failing to make certain of the ordered payments. The DRO alleged that as of June 9, 2008, appellant's total cumulative arrearage was $23,044.78.

Appellant responded to the DRO's motion by filing a motion to modify the parent-child relationship, in which he moved the trial court to reduce his child support payments because of "changed circumstances." He also subsequently paid all past due amounts for January through July 2008 in July 2008 and his payment for August 2008 on August 28, 2008. However, he did not make any child support payments from September 2008 through February 2009, during the pendency of the motion to modify. After a hearing, the trial court denied

2

appellant's requested child support reduction, found him $28,656.58 in arrears (for the September 2008 through February 2009 child support payments), found that he willfully and intentionally failed to obey the trial court's child support order by failing to make payments on March 1, April 1, and June 1, 2008, and held him in contempt for 180 days for each violation of the court's order, with the sentences to be served concurrently. Appellant filed a petition for writ of mandamus and habeas corpus challenging the provisions of the contempt order. Those petitions are currently pending in cause number 2-09-464-CV. This appeal is from the trial court's denial of appellant's motion to reduce child support.

## Standard of Review

We review a trial court's decision on whether to modify child support for an abuse of discretion. *In re B.S.H.*, 308 S.W.3d 76, 78 (Tex. App.—Fort Worth 2009, no pet.); *In re P.J.H.*, 25 S.W.3d 402, 405 (Tex. App.—Fort Worth 2000, no pet.). If there is some probative and substantive evidence to support the judgment, the trial court did not abuse its discretion. *B.S.H.*, 308 S.W.3d at 78; *P.J.H.*, 25 S.W.3d at 405. Legal and factual sufficiency of the evidence are relevant factors in determining whether a trial court has abused its discretion but are not independent grounds for asserting error. *Hardin v. Hardin*, 161 S.W.3d 14, 19 (Tex. App.—Houston [14th Dist.] 2004, pet. granted, judgm't vacated w.r.m.); *In re A.J.J.*, No. 02-04-00265-CV, 2005 WL 914493, at *1 (Tex. App.—Fort Worth Apr. 21, 2005, no pet.) (mem. op.). The party seeking to modify a

3

child support order has the burden to prove a material and substantial change in circumstances. *In re C.C.J.*, 244 S.W.3d 911, 918 (Tex. App.—Dallas 2008, no pet.); *In re Z.B.P.*, 109 S.W.3d 772, 781 (Tex. App.—Fort Worth 2003, no pet.).

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228

4

S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

**Analysis**

A trial court may order a child support obligor's payments modified if, among other reasons, the obligor's circumstances "have materially and substantially changed" since the date of the child support order's rendition. Tex. Fam. Code Ann. § 156.401(a) (Vernon 2008); *In re A.J.J.*, 2005 WL 914493, at *2. Here, appellant challenges the legal and factual sufficiency of the trial court's finding that his circumstances had not materially and substantially changed and the following ancillary findings supporting that finding:

- that credible testimony was offered as to appellant's ability to work additional shifts as an emergency room doctor;

- that appellant had instructed his employers to withhold additional funds from his paycheck for taxes and retirement and that this instruction was

made "to reduce the sum of money available to be withheld for child support";

- that appellant's financial statement, which was admitted, showed that on or about June 5, 2008, his mortgage payment was $3547 per month, his cash flow surplus was $7614 per month, his annual salary was $75,000 per month, and his annual commissions were $240,000;

- that a bank statement for Ezukanma Group of Companies[2] for 3/01/08 through 3/31/08, which was admitted, showed a beginning balance of $196,936.36 and an ending balance of $60,779.66;

- that a bank statement for Ezukanma Group of Companies for 4/01/08 through 4/30/08, which was admitted, showed a beginning balance of $60,779.66 and an ending balance of $14,773.62;

- that a bank statement for Ezukanma Group of Companies for 7/01/08 through 7/31/08, which was admitted, showed a beginning balance of $18,621.58 and an ending balance of $2,002.47;

- that "credible evidence was presented to show that [appellant] is intentionally underemployed in an effort to avoid paying child support for his six children";

---

[2]Although the name on the bank statement is listed as "Ezukanma Group of Companies, Inc. d/b/a Noble One Properties," appellant's counsel represented to the court that the statements were appellant's, which he had provided in discovery. There is no evidence that Ezukanma Group of Companies, Inc. is related to appellant's former or new physician's practice group.

- that appellant failed to present any evidence that decreasing child support would be in the children's best interest; and

- that a malpractice suit that had been filed against appellant did not show a material and substantial change in circumstances because evidence about that suit had been offered at the hearing in 2007 when appellant's child support obligation was initially set at $5,400 per month.

Appellant contends the evidence is legally and factually insufficient to support the trial court's finding that he did not prove a material and substantial change in his circumstances, i.e., there is no evidence that appellant did not suffer a substantial and material change, or in the alternative, that the trial court's failure to so find is against the great weight and preponderance of the evidence. *See City of Keller*, 168 S.W.3d at 807, 827; *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *see Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988).

**Applicable Facts**

At the February 2009 hearing on the motion to modify, appellant testified that although he is a doctor, he was terminated from his nine-year practice effective May 15, 2008. [rr at 29, 36] The medical group that had previously employed him paid him net income of $4,273.79 in 2008[3]; however, the group

_____

[3]According to appellant, the practice group deducted substantial sums from his pay for legal expenses it claimed he owed in connection with a malpractice suit against him. But the trial court did not allow evidence of the suit and

7

also paid some funds directly for appellant's child support obligations between January and June 2008. According to appellant, four other doctors were terminated from the practice at the same time and had sued the practice for unpaid salaries, but appellant had not joined the suit because he could not afford to pay a lawyer. Appellant admitted that in January 2008, he cashed in his retirement insurance in the amount of $216,000; he used it to pay bills and child support, and he invested $21,000 of it in a new physician's practice group. That group does hospital consults for physicians with patients in the hospital who have pulmonary disease. However, he and the other doctors were subject to a noncompete agreement with their former practice group, which prohibited them from practicing within ten miles of their former location on South Adams in Fort Worth.

Appellant testified that this noncompete agreement had affected the new practice's ability to obtain patients; for instance, they had to turn down a contract to treat John Peter Smith Hospital patients because that hospital is within the ten mile radius. Appellant testified that he had received net income from the new practice group, but the trial court did not allow him to testify about income from the new practice in detail because he had failed to timely produce paycheck stubs and monthly profit and loss statements for the practice in discovery. However, appellant also testified that he did not receive any paychecks from the

_____

subsequent judgment because both predated the August 2007 hearing at which the trial court set appellant's child support obligation at $5,400 per month.

8

new practice in 2008. According to appellant, the new practice was having trouble with cash flow. It did not receive any payments from Medicaid or insurance companies for the first three months it was open; according to appellant, those were the practice's only source of income. However, appellant anticipated that the new practice would begin to generate income.

Appellant had attempted to obtain work as an emergency room doctor; he stated that he had filled out applications and signed a contract with Harris, but the trial court did not allow him to testify about the contract because he had not provided it in discovery. Appellant testified that he had not paid the mortgage on his residence since August 2008. According to appellant, he paid $525,000 for the house, and it had a primary lien of $364,000 and a secondary lien of $200,000. When asked whether that meant he owed $560,000 on the house, appellant said yes. He did not think he could sell the house for the amount of loans he had outstanding on it.

Appellant testified that he owns a duplex in Wedgewood on which he owes $116,000, but he said he would not be able to make any money by selling it. He said that he had rented it "at one point" but that he could not keep it rented. He also said that the rent did not cover the expenses on the property. Appellant also had a vehicle, which he had not attempted to sell but for which he could not make any profit because he owed money on it. He testified that he also had a 401k worth about $60,000 but that he was unable to borrow against it.

Appellant also claimed that he had tried to borrow money from banks and relatives but was not able to borrow any money. Lawreta testified that appellant had asked her to loan him money to pay the child support payments that he missed but that she told him she did not have any money.

On cross-examination, the Attorney General introduced evidence that appellant's income at his former practice had been approximately $30,000 per month, and that in 2007, he reported $424,864 in income. Lawreta also questioned appellant about a personal financial statement he had produced during discovery. The statement was dated June 5, 2008; at that time, appellant had failed to pay the monthly $5,400 in March 2008, April 2008, and June 2008. However, he admitted that the statement showed he had $35,000 in the bank on June 5, 2008. He also admitted he had a 401k of $89,000 at that time that he could have cashed out. Appellant admitted that by subtracting liabilities from assets on the statement he produced in discovery, it showed that as of June 5, 2008, he had a net worth of $195,400. He further admitted that he owned some land in Nigeria but that he did not know its value.

The Attorney General introduced evidence that appellant voluntarily requested that his former practice withhold additional funds from his paycheck for federal income tax[4]; however, he denied doing so for the purpose of reducing his

---

[4]Appellant denied that he asked for this increase in withholding after the August 2007 hearing at which the trial court set his $5,400 per month obligation. He also denied making the request in November or December 2007; he said "it was way before then," but he did not remember the exact date.

10

income so that there would not be enough left over to make his child support payments as ordered. According to appellant, he asked for the reduction on his accountant's advice to cover amounts he owed the IRS.[5] But the Attorney General introduced evidence that appellant received a tax refund of $18,119 for the 2007 tax year.

Appellant explained that he owned a part interest in an office building on South Adams with his business partners. He testified that he still owed about $56,000 on a loan he had taken out to purchase that interest and that he could not sell his interest to his other partners or a third party.[6]

**No Material and Substantial Change in Circumstances**

Financial ability to pay child support depends not solely on earnings but on all sources of income. *In re G.J.S.*, 940 S.W.2d 289, 293 (Tex. App.—San Antonio 1997, no pet.); *Clark v. Jamison*, 874 S.W.2d 312, 317 (Tex. App.—Houston [14th Dist.] 1994, no writ). The court may also take into consideration a parent's earning potential in determining a child support question. *In re G.J.S.*, 940 S.W.2d at 293; *In re Striegler*, 915 S.W.2d 629, 638 (Tex. App.—Amarillo 1996,

---

[5]Appellant did include an $18,000 tax obligation as a liability on his June 5, 2008 financial statement.

[6]Appellant listed the $56,000 loan on his financial statement as a secured loan, along with a $200,000 loan that he indicated was secured by his homestead. When asked why he had not listed the $200,000 second mortgage on his financial statement, appellant said he must have made a mistake and inadvertently left it off. However, a careful reading of the statement shows that appellant did list that loan and also indicated that it was secured by his homestead.

writ denied). Thus, a trial court may properly deny reduction in child support of an obligor who no longer makes the same level of income but who has assets at his or her disposal with which to pay child support and who has an earning capacity greater than what his or her current position pays. *See In re G.J.S.*, 940 S.W.2d at 293.

Appellant contends that appellees confused his net worth with his ability to make child support payments. While it was undisputed that appellant was terminated from his prior practice, which temporarily reduced his income, the evidence also showed that appellant had started a new practice and was actively seeing patients in that practice in the same field in which he had previously been practicing. *See In re Striegler*, 915 S.W.2d at 638 (holding trial court can consider obligor's earning potential). The trial court could also have inferred from appellant's failure to produce financial information about his new practice in discovery that he was either intentionally underreporting income from that practice or that he was trying to conceal that income. *See Swate v. Crook*, 991 S.W.2d 450, 453 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (holding that trial court does not abuse its discretion by refusing to reduce child support obligation if obligor fails to present evidence of current financial condition at time of modification hearing), *abrogated on other grounds by Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see also* Tex. Fam. Code Ann. § 154.063 (Vernon 2008) (providing that trial court shall require a party to "furnish information sufficient to accurately identify that party's

12

net resources and ability to pay child support," including current pay stubs). Additionally, the trial court was not obligated to believe appellant's general testimony that he had tried to, but could not, generate income from his assets.[7] *In re J.D.D.*, 242 S.W.3d 916, 922 (Tex. App.—Dallas 2008, pet. denied); *In re P.J.H.*, 25 S.W.3d at 406; *cf. In re G.J.S.*, 940 S.W.2d at 293 (holding that trial court could consider appellant's assets in determining to increase appellant's child support obligation). Furthermore, contrary to appellant's contentions, the evidence did not show that he was *unsuccessful* in obtaining an emergency room job; the evidence showed that he had filled out applications and signed a contract.

Appellant contends that the $5,400 per month child support is presumptively not in the children's best interest because it is "well beyond" the family code's child support guidelines and the children's best interest would not be served by their father being incarcerated for failure to pay that amount while trying to develop a new practice. However, compliance with the statutory guidelines is discretionary when a trial court is considering whether to modify an existing child support order. Tex. Fam. Code Ann. § 156.402 (Vernon 2008); *In re G.J.S.*, 940 S.W.2d at 294; *Escue v. Escue*, 810 S.W.2d 845, 848 (Tex. App.—Texarkana 1991, no writ). A child support order that is not in compliance

---

[7]The trial court likewise was not required to believe appellant's testimony that he asked for additional income tax withholding because he owed the IRS $18,000 when appellant also admitted that he had received a refund of over $18,000 for year 2007 taxes.

13

with the guidelines does not by itself establish a material and substantial change in circumstances. *In re G.J.S.*, 940 S.W.2d at 294. And, faced with evidence supporting the inference that appellant was attempting to avoid paying his child support obligation, the trial court could have determined that it was in the children's best interest to take action that would impress upon appellant the importance of paying that obligation as ordered.[8]

For these reasons, we conclude and hold that the evidence is both legally and factually sufficient to support the trial court's finding that appellant's circumstances had not materially and substantially changed[9] and, thus, that the trial court did not abuse its discretion by denying appellant's motion to reduce the monthly amount of his child support payments.

We overrule all of appellant's issues.

---

[8]After the hearing, the trial court modified the contempt order to require appellant to serve his jail sentence on only the second and fourth weekends of each month.

[9]Because we hold that the evidence is legally and factually sufficient to support this finding on an ultimate issue, we need not address appellant's arguments that the evidence was legally and factually insufficient to support each of the trial court's ancillary findings related to that ultimate issue. *See* Tex. R. App. P. 47.1; *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 625 (Tex. App.—Fort Worth 2006, pet. denied).

## Conclusion

Having overruled appellant's four issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  September 16, 2010