

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-334-CV

IN THE INTEREST OF B.S.H.,
A CHILD

------------

FROM THE 360TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

Cory H. appeals the trial court's order modifying child support. We affirm.

### I.  Background

Cory and Tricia divorced in January 1993 when their only child, B.S.H., was two years old. In the divorce decree, Cory was ordered to pay $180 a month for child support through the Tarrant County Child Support Office beginning February 1, 1993.

In the early part of 1997, Cory started making payments directly to Tricia instead of through the county office.  In 1999, he began to pay $200 each month regularly.  In 2000, he increased the payments to $420 and then to $430 a month.  From June 2001 through September 2002, he usually paid $510 a month.  From October 2002 through July 2005, he consistently paid $450 each month.

In April 2007, Cory filed a petition to modify asking that (1) the direct payments to Tricia be credited to his child support amount, (2) the child support amount be increased to meet family code guidelines, and (3) the amounts paid over the $180 court-ordered monthly payment be credited to his future child support obligation.  The Texas attorney general intervened in the case two weeks later.  Tricia filed an answer and a counter-petition seeking increased support and an arrearage judgment for an alleged three months of missed payments.

The case went to a bench trial in February 2008.  During trial, the parties stipulated that support should be set at $594 a month.  They also stipulated that (1) Cory made all payments shown in Petitioner's Exhibit 1, (2) Petitioner's Exhibit 5, a summary of those payments, was corrected to deduct payments for such items as braces and extra-curricular activities, and (3) Cory had paid $13,185 more in child support than had been ordered by the court.

Cory testified that he had made increased payments to "get ahead" on his child support. Tricia, however, testified that Cory never said to her, "I'm just getting ahead by sending this extra money." Also, in a letter to B.S.H. admitted in evidence, Cory wrote, "Over the years I have increased the child support amount on my own to make sure you had everything you needed growing up."

Tricia further testified that after Cory graduated from college she contacted a lawyer to see about increasing the amount of child support. The lawyer told her that it would cost about $1,100 to modify the child support order. Tricia testified that when she relayed this information to Cory, he suggested that, instead of incurring attorney's fees, he would voluntarily increase the amount of support he was paying based upon his income. Cory and Tricia then agreed on the amount by which support would be increased. They continued to make similar agreements about increases in support over the years.

After taking the case under advisement, the trial court signed an order (1) modifying current support to $594 a month, (2) finding that Cory owed no arrears, and (3) finding that over-payments should not be credited towards future child support obligations.

Cory requested, and the trial court filed, findings of fact and conclusions of law. The trial court found that Cory had voluntarily increased his support

3

payments in agreement with Tricia to avoid the cost of going to court to obtain a modification of the decree and that he had intended the increased support payments to be current support for their child. The trial court concluded that Cory was not entitled to a credit for the future support obligations because of the amounts that he paid in excess of court-ordered child support in the past.

## II. Issues on Appeal

Cory contends in four issues that the trial court abused its discretion by refusing to credit his past excess child support payments toward his future support obligations. He argues that refusal to credit the overpayments violates common law and the purpose of section 154.014 of the family code, denies him a statutory right to reimbursement under section 154.012 of the family code, and amounts to a prohibited retroactive increase in his child support obligation under section 156.401(b) of the family code.

## III. Standard of Review

We review a trial court's decision modifying child support for an abuse of discretion.[1] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or

---

[1] *Worford v. Stamper*, 801 S.W.2d 108, 108–09 (Tex. 1990); *In re P.J.H.*, 25 S.W.3d 402, 405 (Tex. App.—Fort Worth 2000, no pet.).

principles—in other words, whether the act was arbitrary or unreasonable.[2]  In making this determination, we view the evidence in the light most favorable to the trial court's order, indulging every legal presumption in its favor.[3]  An abuse of discretion does not occur as long as there is some probative and substantive evidence to support the trial court's decision.[4]

### IV.  Application of Family Code Section 154.014

In part of his first issue and in his third issue, Cory argues that the trial court's refusal to credit his increased support payments toward his future obligations is contrary to the purpose of family code sections 154.012 and 154.014 and would constitute an impermissible modification of a court decree without approval of the court.  Section 154.014 provides, in pertinent part:

> (a) If a child support agency or local child support registry receives from an obligor who is not in arrears a child support payment in an amount that exceeds the court-ordered amount, the agency or registry, to the extent possible, shall give effect to any expressed intent of the obligor for the application of the amount that exceeds the court-ordered amount.

---

[2] *... Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).

[3] *... P.J.H.*, 25 S.W.3d at 405; *see In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

[4] *... Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

(b) If the obligor does not express an intent for the application of the amount paid in excess of the court-ordered amount, the agency or registry shall:

    (1)  credit the excess amount to the obligor's future child support obligation; and

    (2) promptly disburse the excess amount to the obligee.[5]

Cory concedes that section 154.014 does not control this case because it regulates the manner by which excess child support payments to child support agencies or registries, not to individual obligees, must be applied. He urges, however, that the trial court's order refusing to credit his past over-payments to his future obligations is contrary to the "purpose" of section 154.014, which, he claims, provides guidance on how payments should be applied. The attorney general agrees that section 154.014 offers guidance on "the proper way to apply payments that exceed the court-ordered amount."

We agree that section 154.014 of the family code offers guidance in determining how excess payments should be applied in a case where excess child support payments are made directly to individual obligees. Accordingly, we hold that in a case where an individual obligee receives from an obligor who is not in arrears a child support payment that exceeds the court-ordered amount, the trial court shall give effect to any expressed intent of the obligor

---

[5] Tex. Fam. Code Ann. § 154.014 (Vernon 2008).

6

to determine the proper application of the amount that exceeds the court-ordered amount.

The record in this case shows that the trial court did indeed focus on Cory's intent in making the payments. The court stated during trial, "[i]t's the Court's understanding that the factual issue is what the expressed intent of the obligor was." Thereafter, the trial court made these findings:

> 8. Cory [H.] voluntarily increased the amount of child support he was paying to Tricia [H.] to $200.00 per month in 1999 and then to the sum of $430.00 per month in August or September 2000. This occurred at the same [time] he became a school teacher. At approximately the same time, Respondent Tricia [H.] sought legal advice about modification to increase child support. After that consultation and discussions with Cory [H.], no motion to modify to increase child support was brought since Cory [H.] was paying increased child support without court action.
>
>    . . . .
>
> 10. *Cory [H.] voluntarily increased the amount of child support that he paid directly to Tricia [H.] in 1999 and again in 2000 partially because Tricia [H.] had consulted with an attorney.*
>
> 11. *Cory [H.] voluntarily increased the amount of child support that he paid directly to Tricia [H.] in 1999 and again in 2000 partially because Tricia [H.] agreed to not pursue legal action if the child support payments were increased.*
>
> 12. *Cory [H.] increased the amount he paid to Tricia [H.] as child support in lieu of Tricia [H.] taking legal action to increase support.*
>
> 13. *Cory [H.] intended his increased support amounts beginning in 1999 and then in September 2000 to be current child support.*

14. *Cory [H.] did not intend for payments made in excess of court ordered support to be credited as future child support at the time he made the payments.* (Emphasis added.)

Thus, the trial court found that Cory's intent in paying the excess amount of child support to Tricia was partially to avoid the cost of modifying the decree. There is no finding or evidence that either Cory or Tricia intended the excess payment to effect a modification of the existing child support order. Because Cory has not challenged the trial court's findings that he agreed to pay additional support to avoid the cost of modifying the decree, all of which are supported by the evidence, we are bound to accept them.[6] We overrule part of issue one and all of issue three.

V. Conflict with Family Code Section 154.012 Right of Reimbursement

In issue two and part of issue one, Cory contends that the trial court misinterpreted what section 154.014 means by "expressed intent" and improperly found that Cory's intent was for the excess payments to be for current child support. According to Cory, the question that is to be determined in deciding the obligor's expressed intent is whether the obligor intended that the payment be for "something other than child support." Cory contends that

---

[6] *... Inimitable Group, L.P. v. Westwood Group Dev. II, Ltd.*, 264 S.W.3d 892, 902 n.4 (Tex. App.—Fort Worth 2008, no pet.).

to interpret it to mean whether a payment was intended as future or current support would be incongruous with section 154.012 of the family code, which entitles obligors who overpay to recover the excess without a finding of intent.[7] We disagree.

"Generally, courts are to construe statutes so as to harmonize with other relevant laws, if possible."[8] If adopted by this court, Cory's interpretation of sections 154.012 and 154.014 would put them in conflict. Under section 154.014, if the obligor intends the increased payment to be additional current support, it is treated that way. But, under Cory's interpretation of section 154.012, any increased payment is to be treated as an advance payment towards future obligations, which must be reimbursed after termination of the obligation, regardless of what the obligor intended when he made the payment.

Under the Code Construction Act, in interpreting a statute, it is presumed that a just and reasonable result is intended and that the public interest is favored over any private interest.[9] Cory's interpretation of sections 154.012 and 154.014 would make it impossible for a court to recognize an obligor's

---

[7] Tex. Fam. Code Ann. § 154.012 (Vernon 2008).

[8] *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984).

[9] Tex. Gov't Code Ann. § 311.021(3), (5) (Vernon 2005).

intent to provide additional current support for his or her child. This would not be in the best interest of the children of this state.

Statutes are also to be construed in light of the common law.[10] Under common law, a parent may always provide more support for a child than is required by a court order.[11] "[V]oluntary payments made [in fulfillment], or partial fulfillment, of the common law obligation [to support a child] are not necessarily to be offset against the statutory obligation enforced by a court order."[12] To construe section 154.012 to automatically make any increased support payment an advance payment against future obligations, would be contrary to the common law principle that an obligor may voluntarily provide additional support for his or her child.

The excess child support payments referred to in section 154.012, therefore, do not refer to additional or increased payments that an obligor intends to make to meet the current needs of his or her child.[13] Rather, they

---

[10] *See id.* § 311.023(4).

[11] *In re L.K.K.*, No. 11-07-00106-CV, 2008 WL 4173742, at *2 (Tex. App.—Eastland Sept. 11, 2008, pet. denied) (mem. op.); *Lewis v. Lewis*, 853 S.W.2d 850, 854 (Tex. App.—Houston [14th Dist.] 1993, no writ).

[12] *In re McLemore*, 515 S.W.2d 356, 358 (Tex. Civ. App.—Dallas 1974, orig. proceeding).

[13] *See L.K.K.*, 2008 WL 4173742, at *2.

10

are excess payments mistakenly made or intended to be advances against future obligations.  This is the only interpretation of section 154.012 that harmonizes with section 154.014 and the common law, and that furthers the public interest in promoting the best interest of the children of this state.  We overrule issue two and the remainder of issue one.

## VI.  Retroactive Modification

Cory complains in his fourth issue that the trial court's actions amounted to an impermissible retroactive modification of his child support obligation.  The trial court, however, did not find that Cory was obliged retroactively to provide additional support.  It found only that he had intended his increased payments to be applied to current support for the child and that, as a result, they would not be considered advance payments for future support.  We overrule issue four.

## VII.  Conclusion

We overrule Cory's four issues and affirm the judgment of the trial court.


PER CURIAM


PANEL:  CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  December 23, 2009

11