02-09-162-CV















 

 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 2-09-162-CV

 

 

IN
 THE INTEREST OF E.A.E., O.E.,                                                                      

C.B.E.,
C.E., C.E., AND C.E., 

CHILDREN

 

 

------------

 

FROM THE 233RD
DISTRICT COURT OF TARRANT
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

          This is an appeal from the trial
court’s denial of appellant Noble Ezukanma’s motion to reduce child support for
his six children.  In four issues,
appellant contends that (1) the trial court abused its discretion by denying
his motion to reduce child support because he had been “terminated from his
practice, sued for malpractice, and had been unable to generate virtually any
income in his attempt to start his new practice,” (2) the evidence is legally
and factually insufficient to support the trial court’s finding that there was
not a material change in appellant’s circumstances warranting a reduction, (3)
the evidence was legally and factually insufficient to support the finding that
reduction of support would not be in the children’s best interest when the
child support was already above statutory guidelines, and (4) appellant
conclusively established a material change in circumstances warranting a
reduction.  We affirm.

Factual
and Procedural Background

          After appellant and appellee Lawreta
Njideka Ezukanma were divorced, in a subsequent suit to modify the parent-child
relationship, the trial court ordered appellant to pay $5,400 per month in
child support on the first day of each month. In June 2008, the Tarrant County
Domestic Relations Office IV-D Child Support Monitoring Program (DRO) on behalf
of appellee the Attorney General of Texas filed a motion to enforce asking that
appellant be held in contempt for failing to make certain of the ordered
payments.  The DRO alleged that as of
June 9, 2008, appellant’s total cumulative arrearage was $23,044.78.

          Appellant responded to the DRO’s
motion by filing a motion to modify the parent-child relationship, in which he
moved the trial court to reduce his child support payments because of “changed
circumstances.”  He also subsequently paid
all past due amounts for January through July 2008 in July 2008 and his payment
for August 2008 on August 28, 2008.  However,
he did not make any child support payments from September 2008 through February
2009, during the pendency of the motion to modify.  After a hearing, the trial court denied appellant’s
requested child support reduction, found him $28,656.58 in arrears (for the
September 2008 through February 2009 child support payments), found that he
willfully and intentionally failed to obey the trial court’s child support
order by failing to make payments on March 1, April 1, and June 1, 2008, and
held him in contempt for 180 days for each violation of the court’s order, with
the sentences to be served concurrently. 
Appellant filed a petition for writ of mandamus and habeas corpus
challenging the provisions of the contempt order.  Those petitions are currently pending in
cause number 2-09-464-CV.  This appeal is
from the trial court’s denial of appellant’s motion to reduce child support.

Standard of Review

          We review a trial court’s decision on
whether to modify child support for an abuse of discretion.  In re
B.S.H., 308 S.W.3d 76, 78 (Tex. App.––Fort Worth 2009, no pet.); In re P.J.H., 25 S.W.3d 402, 405 (Tex.
App.––Fort Worth 2000, no pet.).  If
there is some probative and substantive evidence to support the judgment, the
trial court did not abuse its discretion. 
B.S.H., 308 S.W.3d at 78; P.J.H., 25 S.W.3d at 405.  Legal and factual sufficiency of the evidence
are relevant factors in determining whether a trial court has abused its
discretion but are not independent grounds for asserting error.  Hardin
v. Hardin, 161 S.W.3d 14, 19 (Tex. App.––Houston [14th Dist.] 2004, pet.
granted, judgm’t vacated w.r.m.); In re
A.J.J., No. 02-04-00265-CV, 2005 WL 914493, at *1 (Tex. App.––Fort Worth
Apr. 21, 2005, no pet.) (mem. op.).  The
party seeking to modify a child support order has the burden to prove a
material and substantial change in circumstances.  In re
C.C.J., 244 S.W.3d 911, 918 (Tex. App.––Dallas 2008, no pet.); In re Z.B.P., 109 S.W.3d 772, 781 (Tex.
App.––Fort Worth 2003, no pet.).

Findings
of fact entered in a case tried to the court have the same force and dignity as
a jury’s answers to jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court’s findings of fact are
reviewable for legal and factual sufficiency of the evidence to support them by
the same standards that are applied in reviewing evidence supporting a jury’s
answer.  Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994).

We
may sustain a legal sufficiency challenge only when (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361,
362–63 (1960).  In determining whether
there is legally sufficient evidence to support the finding under review, we
must consider evidence favorable to the finding if a reasonable factfinder could
and disregard evidence contrary to the finding unless a reasonable factfinder
could not.  Cent. Ready Mix Concrete
Co. v. Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).

When
reviewing an assertion that the evidence is factually insufficient to support a
finding, we set aside the finding only if, after considering and weighing all
of the evidence in the record pertinent to that finding, we determine that the
evidence supporting the finding is so weak, or so contrary to the overwhelming
weight of all the evidence, that the answer should be set aside and a new trial
ordered.  Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986) (op. on reh=g); Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); In re King’s Estate, 150
Tex. 662, 244 S.W.2d 660, 661 (1951).

Analysis

          A trial court may order a child
support obligor’s payments modified if, among other reasons, the obligor’s
circumstances “have materially and substantially changed” since the date of the
child support order’s rendition.  Tex.
Fam. Code Ann. § 156.401(a) (Vernon 2008); In
re A.J.J., 2005 WL 914493, at *2. 
Here, appellant challenges the legal and factual sufficiency of the
trial court’s finding that his circumstances had not materially and substantially
changed and the following ancillary findings supporting that finding:

·       
that credible testimony was offered as to
appellant’s ability to work additional shifts as an emergency room doctor;

·       
that appellant had instructed his employers
to withhold additional funds from his paycheck for taxes and retirement and
that this instruction was made “to reduce the sum of money available to be withheld
for child support”;

·       
that appellant’s financial statement, which
was admitted, showed that on or about June 5, 2008, his mortgage payment was $3547
per month, his cash flow surplus was $7614 per month, his annual salary was
$75,000 per month, and his annual commissions were $240,000;

·       
that a bank statement for Ezukanma Group of
Companies[2]
for 3/01/08 through 3/31/08, which was admitted, showed a beginning balance of
$196,936.36 and an ending balance of $60,779.66;

·       
that a bank statement for Ezukanma Group of
Companies for 4/01/08 through 4/30/08, which was admitted, showed a beginning
balance of $60,779.66 and an ending balance of $14,773.62;

·       
that a bank statement for Ezukanma Group of
Companies for 7/01/08 through 7/31/08, which was admitted, showed a beginning
balance of $18,621.58 and an ending balance of $2,002.47;

·       
that “credible evidence was presented to show
that [appellant] is intentionally underemployed in an effort to avoid paying
child support for his six children”;

·       
that appellant failed to present any evidence
that decreasing child support would be in the children’s best interest; and

·       
that a malpractice suit that had been filed against
appellant did not show a material and substantial change in circumstances
because evidence about that suit had been offered at the hearing in 2007 when
appellant’s child support obligation was initially set at $5,400 per month.

Appellant
contends the evidence is legally and factually insufficient to support the
trial court’s finding that he did not prove a material and substantial change
in his circumstances, i.e., there is no evidence that appellant did not suffer
a substantial and material change, or in the alternative, that the trial
court’s failure to so find is against the great weight and preponderance of the
evidence.  See City of Keller, 168 S.W.3d at 807, 827; Cropper
v. Caterpillar Tractor Co., 754 S.W.2d 646, 651 (Tex. 1988); see
Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988).

Applicable Facts

At
the February 2009 hearing on the motion to modify, appellant testified that
although he is a doctor, he was terminated from his nine-year practice effective
May 15, 2008.  [rr at 29, 36]  The medical group that had previously
employed him paid him net income of $4,273.79 in 2008[3];
however, the group also paid some funds directly for appellant’s child support
obligations between January and June 2008. 
According to appellant, four other doctors were terminated from the
practice at the same time and had sued the practice for unpaid salaries, but
appellant had not joined the suit because he could not afford to pay a
lawyer.  Appellant admitted that in January
2008, he cashed in his retirement insurance in the amount of $216,000; he used
it to pay bills and child support, and he invested $21,000 of it in a new
physician’s practice group.  That group
does hospital consults for physicians with patients in the hospital who have
pulmonary disease.  However, he and the
other doctors were subject to a noncompete agreement with their former practice
group, which prohibited them from practicing within ten miles of their former
location on South Adams in Fort Worth.

Appellant
testified that this noncompete agreement had affected the new practice’s
ability to obtain patients; for instance, they had to turn down a contract to
treat John Peter Smith Hospital patients because that hospital is within the
ten mile radius.  Appellant testified
that he had received net income from the new practice group, but the trial
court did not allow him to testify about income from the new practice in detail
because he had failed to timely produce paycheck stubs and monthly profit and
loss statements for the practice in discovery. However, appellant also
testified that he did not receive any paychecks from the new practice in
2008.  According to appellant, the new
practice was having trouble with cash flow. 
It did not receive any payments from Medicaid or insurance companies for
the first three months it was open; according to appellant, those were the
practice’s only source of income. 
However, appellant anticipated that the new practice would begin to
generate income.

Appellant
had attempted to obtain work as an emergency room doctor; he stated that he had
filled out applications and signed a contract with Harris, but the trial court
did not allow him to testify about the contract because he had not provided it
in discovery.  Appellant testified that
he had not paid the mortgage on his residence since August 2008.  According to appellant, he paid $525,000 for
the house, and it had a primary lien of $364,000 and a secondary lien of
$200,000.  When asked whether that meant
he owed $560,000 on the house, appellant said yes.  He did not think he could sell the house for
the amount of loans he had outstanding on it.

Appellant
testified that he owns a duplex in Wedgewood on which he owes $116,000, but he
said he would not be able to make any money by selling it.  He said that he had rented it “at one point”
but that he could not keep it rented.  He
also said that the rent did not cover the expenses on the property.  Appellant also had a vehicle, which he had not
attempted to sell but for which he could not make any profit because he owed
money on it.  He testified that he also
had a 401k worth about $60,000 but that he was unable to borrow against it.

Appellant
also claimed that he had tried to borrow money from banks and relatives but was
not able to borrow any money.  Lawreta testified
that appellant had asked her to loan him money to pay the child support
payments that he missed but that she told him she did not have any money.

          On cross-examination, the Attorney
General introduced evidence that appellant’s income at his former practice had
been approximately $30,000 per month, and that in 2007, he reported $424,864 in
income.  Lawreta also questioned
appellant about a personal financial statement he had produced during
discovery.  The statement was dated June
5, 2008; at that time, appellant had failed to pay the monthly $5,400 in March
2008, April 2008, and June 2008. However, he admitted that the statement showed
he had $35,000 in the bank on June 5, 2008. 
He also admitted he had a 401k of $89,000 at that time that he could
have cashed out.  Appellant admitted that
by subtracting liabilities from assets on the statement he produced in
discovery, it showed that as of June 5, 2008, he had a net worth of $195,400.  He further admitted that he owned some land
in Nigeria but that he did not know its value.

          The Attorney General introduced
evidence that appellant voluntarily requested that his former practice withhold
additional funds from his paycheck for federal income tax[4];
however, he denied doing so for the purpose of reducing his income so that
there would not be enough left over to make his child support payments as
ordered.  According to appellant, he
asked for the reduction on his accountant’s advice to cover amounts he owed the
IRS.[5]  But the Attorney General introduced evidence
that appellant received a tax refund of $18,119 for the 2007 tax year.

          Appellant explained that he owned a
part interest in an office building on South Adams with his business
partners.  He testified that he still owed
about $56,000 on a loan he had taken out to purchase that interest and that he could
not sell his interest to his other partners or a third party.[6]

No Material and Substantial Change in
Circumstances

Financial
ability to pay child support depends not solely on earnings but on all sources
of income.  In re G.J.S., 940 S.W.2d 289, 293 (Tex. App.––San
Antonio 1997, no pet.); Clark v. Jamison,
874 S.W.2d 312, 317 (Tex. App.––Houston [14th Dist.] 1994, no writ).  The court may also take into consideration a
parent’s earning potential in determining a child support question.  In re
G.J.S., 940 S.W.2d at 293; In re
Striegler, 915 S.W.2d 629, 638 (Tex. App.––Amarillo 1996, writ denied).  Thus, a trial court may properly deny
reduction in child support of an obligor who no longer makes the same level of
income but who has assets at his or her disposal with which to pay child
support and who has an earning capacity greater than what his or her current
position pays.  See In re G.J.S., 940 S.W.2d at 293.

          Appellant contends that appellees
confused his net worth with his ability to make child support payments.  While it was undisputed that appellant was
terminated from his prior practice, which temporarily reduced his income, the evidence
also showed that appellant had started a new practice and was actively seeing
patients in that practice in the same field in which he had previously been
practicing.  See In re Striegler, 915 S.W.2d at 638 (holding trial court can
consider obligor’s earning potential).  The
trial court could also have inferred from appellant’s failure to produce
financial information about his new practice in discovery that he was either
intentionally underreporting income from that practice or that he was trying to
conceal that income.  See Swate v. Crook, 991 S.W.2d 450, 453
(Tex. App.––Houston [1st Dist.] 1999, pet. denied) (holding that trial court
does not abuse its discretion by refusing to reduce child support obligation if
obligor fails to present evidence of current financial condition at time of
modification hearing), abrogated on other
grounds by Smith v. Brown, 51 S.W.3d 376, 381 (Tex. App.––Houston [1st
Dist.] 2001, pet. denied); see also
Tex. Fam. Code Ann. § 154.063 (Vernon 2008) (providing that trial court shall
require a party to “furnish information sufficient to accurately identify that
party’s net resources and ability to pay child support,” including current pay
stubs).  Additionally, the trial court
was not obligated to believe appellant’s general testimony that he had tried
to, but could not, generate income from his assets.[7]  In re
J.D.D., 242 S.W.3d 916, 922 (Tex. App.––Dallas 2008, pet. denied); In re P.J.H., 25 S.W.3d at 406; cf. In
re G.J.S., 940 S.W.2d at 293 (holding that trial court could consider
appellant’s assets in determining to increase appellant’s child support
obligation).  Furthermore, contrary to
appellant’s contentions, the evidence did not show that he was unsuccessful in obtaining an emergency
room job; the evidence showed that he had filled out applications and signed a
contract.

          Appellant contends that the $5,400 per
month child support is presumptively not in the children’s best interest
because it is “well beyond” the family code’s child support guidelines and the
children’s best interest would not be served by their father being incarcerated
for failure to pay that amount while trying to develop a new practice.  However, compliance with the statutory
guidelines is discretionary when a trial court is considering whether to modify
an existing child support order.  Tex.
Fam. Code Ann. § 156.402 (Vernon 2008); In
re G.J.S., 940 S.W.2d at 294; Escue
v. Escue, 810 S.W.2d 845, 848 (Tex. App.—Texarkana 1991, no writ).  A child support order that is not in
compliance with the guidelines does not by itself establish a material and
substantial change in circumstances.  In re G.J.S., 940 S.W.2d at 294.  And, faced with evidence supporting the
inference that appellant was attempting to avoid paying his child support
obligation, the trial court could have determined that it was in the children’s
best interest to take action that would impress upon appellant the importance
of paying that obligation as ordered.[8]

For
these reasons, we conclude and hold that the evidence is both legally and
factually sufficient to support the trial court’s finding that appellant’s
circumstances had not materially and substantially changed[9]
and, thus, that the trial court did not abuse its discretion by denying
appellant’s motion to reduce the monthly amount of his child support payments.

          We overrule all of appellant’s issues.

Conclusion

          Having overruled appellant’s four
issues, we affirm the trial court’s judgment.

 

 

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

 

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

 

DELIVERED:  September 16, 2010











[1]See Tex. R. App. P. 47.4.





[2]Although
the name on the bank statement is listed as “Ezukanma Group of Companies, Inc.
d/b/a Noble One Properties,” appellant’s counsel represented to the court that
the statements were appellant’s, which he had provided in discovery.  There is no evidence that Ezukanma Group of
Companies, Inc. is related to appellant’s former or new physician’s practice
group.





[3]According
to appellant, the practice group deducted substantial sums from his pay for
legal expenses it claimed he owed in connection with a malpractice suit against
him.  But the trial court did not allow
evidence of the suit and subsequent judgment because both predated the August
2007 hearing at which the trial court set appellant’s child support obligation
at $5,400 per month.





[4]Appellant
denied that he asked for this increase in withholding after the August 2007
hearing at which the trial court set his $5,400 per month obligation.  He also denied making the request in November
or December 2007; he said “it was way before then,” but he did not remember the
exact date.

 





[5]Appellant
did include an $18,000 tax obligation as a liability on his June 5, 2008
financial statement.

 





[6]Appellant
listed the $56,000 loan on his financial statement as a secured loan, along
with a $200,000 loan that he indicated was secured by his homestead. When asked
why he had not listed the $200,000 second mortgage on his financial statement,
appellant said he must have made a mistake and inadvertently left it off.  However, a careful reading of the statement
shows that appellant did list that loan and also indicated that it was secured
by his homestead.





[7]The
trial court likewise was not required to believe appellant’s testimony that he
asked for additional income tax withholding because he owed the IRS $18,000
when appellant also admitted that he had received a refund of over $18,000 for
year 2007 taxes.

 





[8]After
the hearing, the trial court modified the contempt order to require appellant
to serve his jail sentence on only the second and fourth weekends of each
month.

 





[9]Because
we hold that the evidence is legally and factually sufficient to support this
finding on an ultimate issue, we need not address appellant’s arguments that
the evidence was legally and factually insufficient to support each of the
trial court’s ancillary findings related to that ultimate issue.  See
Tex. R. App. P. 47.1; Main Place Custom
Homes, Inc. v. Honaker, 192 S.W.3d 604, 625 (Tex. App.––Fort Worth 2006,
pet. denied).