

NUMBER 13-18-00271-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHRISTINE TROIANI,                                                                              Appellant,

v.

ANTHONY TROIANI,                                                                                Appellee.

**On appeal from the 444th District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Tijerina
Memorandum Opinion by Chief Justice Contreras**

Appellant Christine Troiani, pro se, challenges the trial court's order in a suit affecting the parent-child relationship. Following Christine's divorce from appellee Anthony Troiani, the Office of the Attorney General (OAG) filed suit to modify child support and confirm child support arrearages. By three issues, Christine argues the trial court abused its discretion by: (1) denying the relief requested by the OAG in its suit; (2)

holding that Anthony overpaid his child support obligations, granting him a credit against his future obligations, and reducing his monthly amount due; and (3) "failing to allow her to rebut" Anthony's testimony. We affirm in part, reverse and render in part, and reverse and remand in part.

## I. BACKGROUND

On May 3, 2013, the trial court rendered a divorce decree providing in part that Christine and Anthony shall each be joint managing conservators of the parties' two children, who were born in 2000 and 2004. Under the terms of the decree, Anthony was to pay child support to Christine in the amount of $1,875 per month, beginning on February 1, 2012 and ending when one of the children reaches eighteen years of age, marries, or dies. The monthly amount due would then be reduced to $1,500 until the other child reaches eighteen years of age, marries, or dies. The decree further noted that the children were then enrolled in Christine's employer-provided health insurance plan, and so it ordered Anthony to pay Christine $135 per month for insurance premiums as medical support beginning April 1, 2012.

In May 2014, Christine filed a petition for modification and motion for enforcement, asking the trial court to (1) increase Anthony's child support payments to include their son's private school tuition and fees, and (2) award her all proceeds from the sale of certain community real property. The trial court rendered an order granting Christine's requests on August 1, 2014, and Anthony appealed. We affirmed in part and reversed and rendered in part. *Troiani v. Troiani*, No. 13-14-00630-CV, 2016 WL 4702685, at *3–5 (Tex. App.—Corpus Christi–Edinburg Sept. 8, 2016, no pet.) (mem. op.) (concluding that, "[a]bsent any evidence of the child's proven needs, the trial court abused its

2

discretion in ordering Anthony to pay private school tuition," but that "the trial court did not impermissibly alter or change the division of property" by requiring Anthony to pay Christine the net proceeds from the sale of the community property).

On July 12, 2016, the OAG filed the instant suit alleging that, as of June 20, 2016, Anthony was $4,095.03 in arrears on his child support obligation and $1,337.98 in arrears on his medical support obligation, based on the amounts due under the divorce decree.[1] The petition asked for modification of child support due to a material and substantial change in circumstances. *See* TEX. FAM. CODE ANN. § 156.401(a)(1). The petition also alleged that Christine's health insurance premiums for the children had increased to $277 per month in March 2015, and it asked the court to enter judgment against Anthony for the additional costs incurred by Christine on health insurance premiums since that time, as well as for fifty percent of unreimbursed medical expenses which she had allegedly incurred. In response, Anthony filed a "Counterpetition to Recover Child Support Payments Made in Excess of Child Support Order" which argued that, as of the time of our judgment in the 2016 appeal, he had already paid $8,845.60 in child support— including tuition payments—and that he was therefore not in arrears.[2] Christine and the OAG each filed responses to Anthony's counterpetition.

The OAG later filed three amended petitions, each revising the alleged arrearage

---

[1] The OAG has not filed a brief and is not a party to this appeal.

[2] In 2017, Anthony filed a petition for writ of mandamus and a companion appeal challenging the authority of a visiting judge to render orders in the underlying case. We conditionally granted mandamus relief and dismissed the appeal as moot. *See Troiani v. Troiani*, No. 13-17-00321-CV, 2017 WL 2807388, at *1 (Tex. App.—Corpus Christi–Edinburg June 29, 2017, no pet.) (mem. op.); *In re Troiani*, No. 13-17-00204-CV, 2017 WL 3806296, at *5 (Tex. App.—Corpus Christi–Edinburg June 27, 2017, orig. proceeding) (mem. op.) (concluding that visiting judge's assignment expired on June 6, 2016, and directing the trial court to vacate orders issued by the visiting judge after that date).

amount. Its live pleading, a third amended petition filed on February 16, 2018, stated that as of that date, Anthony in fact overpaid his child support obligation by $1,794.98 and did not owe any medical support arrearage. The third amended petition retained the OAG's original request that Anthony be ordered to pay Christine the increased health insurance costs and fifty percent of unreimbursed medical expenses. It stated that, if the court offsets the amounts due for unreimbursed medical expenses by the overpayment of child support, the remaining balance owed by Anthony would be $3,490.15.

On February 20, 2018, Anthony filed a "First Amended Motion For Enforcement By Contempt and Order to Appear and Modification" in which he alleged that there were twenty-three instances between 2015 and 2017 when Christine failed to comply with the visitation provisions of the final decree. He asked for Christine to be held in contempt, jailed, and fined. On the same day, Anthony filed a "First Amended Petition to Recover Child Support Payments Made In Excess of Child Support Order Or in the Alternative, Offset" in which he reiterated the arguments made in his earlier counterpetition and additionally argued that he had made over $8,000 in direct tuition payments which should be credited as child support.

Anthony's first amended petition also alleged the parties had entered into an "Accord and Satisfaction" agreement on October 12, 2012 and that, at the time of the agreement, the OAG indicated that he was $1,710 in arrears in child support. He therefore contended that, by signing the agreement, Christine waived her entitlement to that amount. A copy of the agreement was attached to his petition.

A hearing was held on March 21, 2018, at which the OAG and both parties were each represented by counsel. The trial court later signed an order on April 21, 2018,

4

granting Anthony's requested modification, granting the OAG's request for modification in part, and denying the OAG's request for an order as to unreimbursed medical expenses. The order denied the OAG's motion, made at the hearing, to amend its pleadings to request an increase in child support going forward. It further stated that Anthony was not in child support or medical support arrears as of the date of the order, and it contained the following additional findings:

> The Court finds that [Anthony] has overpaid his child support obligation as of March 21, 2018 as follows: [1] by payment of private school tuition for his son . . . in the amount of $8,820.60, and [2] The Court finds that [Anthony] and [Christine] entered into an accord and satisfaction whereby any child support arrearage that existed at the time would be zeroed out. The Court finds at the time the parties entered in the accord and satisfaction, [Anthony] was in child support arrears in the amount of $3,760.00 as of October 12, 2012. THEREFORE, the Court ORDERS that [Anthony] receive a total credit against his future child support obligations in the amount of $14,950.40 as of March 21, 2018.

> The Court finds that guideline child support for [Anthony] is $1,923.75 per month; however, the Court ORDERS a monthly offset of his current child support obligation in the amount of $311.46 each month until the $14,950.40 credit has applied to his future child support obligations. This calculation results in 48 months of a $311.46 reduction in monthly child support.

In accordance with these findings, the trial court ordered Anthony to pay the following amounts in monthly child support: $1,612.29 beginning on April 1, 2018, and ending when either child turns eighteen, marries, or dies; $1,184.79 thereafter until March 2022; and $1,496.25 from April 1, 2022, until the other child turns eighteen, marries, or dies. The April 21 order also required Anthony to pay Christine $277 in monthly medical expenses as additional child support, for as long as his child support obligation continues.

On May 14, 2018, the trial court signed findings of fact and conclusions of law addressing only Anthony's contempt allegations. The court found, among other things,

5

that Christine had failed to surrender the parties' minor daughter to Anthony for specified possession periods, in violation of the terms of the divorce decree, on twenty-two occasions between 2015 and 2017. Christine was found to be in contempt of court and was ordered to serve 180 days in jail for each violation, with the terms of confinement to run concurrently, and the confinement suspended on condition that Christine comply with the order and pay $5,000 to Anthony in attorney's fees. The trial court also ordered that Anthony would have two additional periods of possession of up to fourteen days in 2018 and 2019. Christine filed a motion for new trial, which was denied.

This appeal followed.

## II. DISCUSSION

### A. Standard of Review

A trial court's ruling on a motion for enforcement or modification of child support is reviewed for an abuse of discretion. *Chenault v. Banks*, 296 S.W.3d 186, 189 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see In re A.M.W.*, 313 S.W.3d 887, 890 (Tex. App.—Dallas 2010, no pet.). A court abuses its discretion when it acts without reference to any guiding rules or principles, or fails to analyze or apply the law correctly. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error; however, they are relevant factors in assessing whether an abuse of discretion occurred. *Banker v. Banker*, 517 S.W.3d 863, 869 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied).

### B. Relief Requested in OAG's Petition

By a multifarious first issue, Christine argues that the trial court abused its

discretion by failing to grant the relief requested in the OAG's third amended petition for modification of child support and confirmation of arrearages. She also complains by this issue about the trial court's denial of unreimbursed medical expenses and its calculation of health insurance premiums.

### 1. Modification of Current Child Support Obligation

Christine initially argues by her first issue that the trial court erred by: "holding that the OAG had not pled a modification of child support above the guidelines due to the proven need[s] of the children"; denying modification of child support; and excluding evidence related to child support, medical support, and the needs of the children.

At the beginning of the hearing on the OAG's enforcement motion, the OAG's attorney moved to strike an amended answer which Anthony had filed after the pleading deadline set by the court. According to the OAG's counsel, Anthony's late-filed amended answer asserted certain new affirmative defenses to the OAG's claims. The following colloquy occurred:

> THE COURT: Okay. All right. The Court agrees with you then, [OAG's counsel], and the answer is stricken. By the same token, however, [counsel], your pleadings don't request enhanced support and so the Court is not going to entertain evidence in that regard either. All right.
>
> [OAG's counsel]: I except to that ruling, Your Honor. Again, I would show, for purposes of the record, that that has been an issue in this case since day one. There is no surprise. I'm requesting the Court to grant us leave to file trial amendment for that purpose.
>
> THE COURT: Denied.

The trial court's April 21, 2018 order states: "IT IS ORDERED that the AG's request for

7

trial amendment to allow for additional support in accordance with the proven needs of the children is DENIED."

In response to Christine's issue on appeal, Anthony argues that the OAG's live petition "does not state that she is requesting child support over the statutory cap[3] or in accordance with the proven needs of the children, if any, nor do they seek enforcement." He contends that "[t]he OAG's live pleading requested only modification and confirmation of arrears."

The OAG's live petition states in relevant part as follows:

MODIFICATION

12.    The order to be modified is entitled "Final Decree of Divorce" and was signed on 5.3.2013.   A true and of [sic] the relevant portions dealing with support obligations is attached as EXHIBIT 2 and incorporated by reference for all purposes.

13.    The circumstances of the children or a person affected by the order to be modified have materially and substantially changed since rendition of the order, or it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines, or the order does not provide for health care coverage as required under Section 154.182.   The Court should modify an order that provides for the support of a child, including an order for health care coverage under Section 154.182, as follows:

    A.    appropriate current child support should be ordered pursuant to Texas Family Code Chapter 154;

    B.    appropriate provisions regarding health care coverage and for

---

3 Anthony repeatedly refers to a "statutory cap" on child support.   In fact, the family code does not limit or "cap" the amount of child support an obligor may be ordered to pay, but instead provides that, when an obligor has net monthly resources above a certain set figure, the trial court may award child support in excess of the statutory guidelines "depending on the income of the parties and the proven needs of the child."   TEX. FAM. CODE ANN. § 154.126(a).   The resource level which triggers application of § 154.126 has sometimes been referred to as a "statutory cap."   *See, e.g.*, *In re Valadez*, 980 S.W.2d 910, 914 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.).

allocation of the reasonable and necessary health care expenses of the children that are not reimbursed by health care coverage should be ordered pursuant to Texas Family Code Chapter 154. In addition, the Court should order health care coverage, including any employment-related or other group health care coverage that is available to the parent;

C.     all provisions for the support of the children should be ordered extended for so long as any child remains fully enrolled and complying with minimum attendance requirements in a secondary school program leading toward a high school diploma or enrolled in courses for joint high school and junior college credit, or remains a minor, or until further order of the Court, pursuant to Texas Family Code Chapter 154; and/or

D.     temporary orders pursuant to Texas Family Code § 155.005 and § 156.006 should be granted for the welfare of the children by ordering child support, medical support and uninsured expenses while this case is pending.

The Court should modify the support order as to obligations accruing after the earlier of the date of service of citation or appearance on this motion.

In Texas, a petition for relief need only contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a); *see Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007) (observing that fair notice is a "relatively liberal standard"). The test for determining whether a petition provides "fair notice" is whether the opposing party can ascertain from the pleading the nature and basic issues presented by the controversy and what evidence might be relevant. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–25 (Tex. 2017); *Low*, 221 S.W.3d at 612.

The OAG's live petition, as directly quoted above, specifically requested a modification of child support on the bases permitted by statute. *See* TEX. FAM. CODE ANN. § 156.401(a)(1)(A) (permitting modification of a prior child support order if "the

9

circumstances of the child or a person affected by the order have materially and substantially changed since . . . the date of the order's rendition"); *id.* § 156.401(a)(2) (same where "it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines"). Anthony cites no authority, and we find none, establishing that "fair notice" requires a party to specifically plead that it is seeking child support *in excess of the statutory guidelines*, as opposed to merely pleading for a modification. *See id.* § 154.126 (providing that if the obligor's monthly net resources exceed the amount provided in § 154.125(a), as here, the court "shall presumptively apply" the guidelines and "may order additional amounts of child support as appropriate, depending on the income of the parties and the proven needs of the child"). We find that the OAG's live pleading provided fair notice to Anthony that an increase in his current child support obligation—either within or in excess of the statutory guidelines set forth in § 154.125—was sought. The trial court abused its discretion in determining otherwise.

Moreover, a court has no discretion to refuse permission for a party to amend its pleadings at trial unless: (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, making it prejudicial on its face, and the opposing party objects to the amendment. *See* TEX. R. CIV. P. 66; *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990); *Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 64 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). There was no showing at trial that the OAG's request for modification of child support in excess of the guidelines was in any way prejudicial or

surprising to Anthony. Therefore, even if the OAG had not specifically requested this modification in its live pleading, the trial court abused its discretion in denying the OAG's request for a trial amendment in that regard. *See State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994); *Ortale v. City of Rowlett*, 696 S.W.2d 640, 641 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (concluding the trial court abused its discretion in denying leave to file a trial amendment in the absence of a showing that the opposing party would be surprised or prejudiced in the maintenance or defense of the action); *see also Rev 2 Props., Inc. v. Skip's Rest. Equip., Inc.*, No. 13-17-00409-CV, 2018 WL 6815476, at *5 (Tex. App.—Corpus Christi–Edinburg Dec. 27, 2018, no pet.) (mem. op.).

### 2. Child Support Arrearages

Christine's first issue also challenges the trial court's failure to render judgment confirming a child support arrearage. Specifically, she argues that "the incremental increases in health insurance from $135.00 to $156.00 (as per August 2014 orders) were not calculated as medical support but attributed to child support incorrectly" and that "[t]he trial court erred and abused its discretion in failing to base its decisions on accurate calculations and findings." However, the OAG's live petition in this proceeding did not allege that Anthony owed any child support arrearage as of February 16, 2018. Therefore, even if the trial court incorrectly attributed Anthony's previous payments for the increased health insurance costs as child support, it did not err in finding no child support arrearage. *See* TEX. R. CIV. P. 301 (stating that judgment must conform to the pleadings).

### 3. Unreimbursed Medical Expenses

Next, Christine's first issue argues that there was factually insufficient evidence to

11

support the trial court's refusal to award her a judgment for fifty percent of unreimbursed medical expenses.[4]   When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence such that it is clearly wrong and unjust.   *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).   The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony, and a reviewing court may not impose its own opinion to the contrary.   *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

The divorce decree stated that each party is responsible for fifty percent of the children's medical expenses which are unreimbursed by insurance.   It further stated:

> The party who incurs a health-care expense on behalf of a child is ORDERED to submit to the other party all forms, receipts, bills, and statements reflecting the uninsured portion of the health-care expenses within thirty days after he or she receives them.   The nonincurring party is ORDERED to pay his or her percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's percentage of the uninsured portion of the health-care expenses within thirty days after the nonincurring party receives the forms, receipts, bills, or statements.

The OAG's live petition alleged that Christine incurred medical expenses for the children and that she "presented proof and demand for payment" to Anthony, but that Anthony "has failed and refused to pay the expenses in the total amount of $4[,]435.50."

At the March 21, 2018 hearing, Christine testified that she kept records of the

---

[4] The final judgment declares that Anthony had no medical support arrearage as of the date of the hearing, but does not mention the claim for unreimbursed medical expenses.

children's medical expenses she incurred since August 2014, and the records were introduced into evidence over Anthony's hearsay objection. When counsel asked "And have you been submitting those bills to [Anthony]?," Christine replied: "Yes, I have." She later stated that she "had been submitting them periodically to [Anthony]." On cross-examination by Anthony's counsel, Christine acknowledged that, as to at least some of the medical expenses, she did not provide notice to Anthony until more than thirty days after she received the bill. When asked "And is it your habit and your routine to hold on to these bills for months at a time?," Christine replied: "Some bills are sent at later dates. . . . Some of these bills are received through mail at later dates than when the service was actually rendered." When asked whether she complied with the decree by providing receipts and bills within thirty days of receiving them, Christine replied: "If I was unable to, it's because, like I said, it's because the mail doesn't deliver the bills immediately after the service is rendered. It may take a couple of months."

Anthony contends that the trial court did not err because the evidence supports a finding that Christine failed to give him timely notice as required by the decree.[5] We agree. Christine's testimony was equivocal regarding when she notified Anthony of the various bills and receipts. She acknowledged that she sent some notices untimely and she explained that this was because medical providers often do not send bills until months after treatment, but under the decree, the thirty-day notice period starts when she

---

[5] Anthony argues elsewhere in his brief that "[t]he language in the decree placed an affirmative duty on Christine to notify Anthony, in a timely manner, with documentation of what she actually paid before imposing a duty on Anthony to reimburse her." That is incorrect—under the decree, a party incurring medical expenses must notify the other party of bills and receipts showing that medical expenses were incurred for the children, but need not show that any amount was "actually paid."

13

receives the bill, not when treatment is rendered.

We conclude that the trial court, as the sole judge of witness credibility, *see id.*, could have reasonably found that Christine failed to meet her burden to show she gave Anthony timely notice as required by the decree. And although the decree did not explicitly state that Anthony's obligation to pay unreimbursed medical expenses was contingent on the *timeliness* of Christine's notifications, it has been repeatedly held in similar cases that it is not an abuse of discretion to deny a request for medical expenses when it is not shown that notices of those expenses were sent timely. *See In re L.L.*, 341 S.W.3d 22, 25 (Tex. App.—San Antonio 2010, no pet.) (affirming trial court's denial of medical expenses, under decree terms virtually identical to those at issue here, where appellant "failed to provide timely notice of the expense as required by the decree"); *In re T.J.L.*, 97 S.W.3d 257, 267 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (affirming trial court's ruling that appellee was not responsible for medical expenses where appellant "did not timely submit expenses to [appellee] as required to obtain reimbursement"); *see also In re L.K.*, No. 02-18-00049-CV, 2018 WL 5832131, at *3 (Tex. App.—Fort Worth Nov. 8, 2018, no pet.) (mem. op.) (noting that "when child-support orders condition obligations to provide support on events that do not occur, trial courts do not have authority to grant enforcement of the obligations"); *In re E.G.*, No. 02-16-00302-CV, 2017 WL 3821862, at *3 (Tex. App.—Fort Worth Aug. 31, 2017, no pet.) (mem. op.) (affirming trial court's denial of claim for medical expenses where "[a]ppellant provided no evidence at trial that she ever furnished [appellee] any 'forms, receipts, bills, and explanations of benefits paid'" as required by decree); *In re M.S.C.*, No. 05-14-01581-CV, 2016 WL 929218, at *5 (Tex. App.—Dallas Mar. 11, 2016, no pet.) (mem. op.) (holding that

14

appellant's "obligation to reimburse [appellee] was never triggered" because appellee did not "sen[d] any documents 'reflecting the uninsured portion of the health-care expenses' and 'stating the benefits paid' within ten days of his receiving them" as required by the decree); *In re I.O.K.*, No. 05-13-01201-CV, 2014 WL 3939379, at *1–3 (Tex. App.—Dallas Aug. 13, 2014, no pet.) (mem. op.) (reversing order finding appellant in contempt for failure to pay medical expenses because appellee failed to provide receipts, bills, and statements within thirty days after she received them, as required by the decree).

The trial court's implicit ruling that Anthony's obligation to pay his share of unreimbursed medical expenses was never triggered because Christine failed to provide timely notice was not against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242. The trial court did not abuse its discretion by declining to award Christine relief on this claim.

### 4. Health Insurance Premiums

Lastly, Christine's first issue argues the trial court erred by failing to award her a judgment for the amount of children's health insurance premiums she incurred above the amount set forth in the divorce decree. The decree ordered Anthony to pay $135 per month for the children's health insurance premiums and also stated:

> In the event of an increase in the cost of maintaining the group health insurance available to the children through [Christine]'s employer, IT IS ORDERED that [Christine] provide [Anthony] with written proof of the rise in the cost of insurance available to the children and [Anthony] is ORDERED to pay the increased cost of the group health insurance available to the children.

At the hearing, Christine testified that the monthly premium increased from $135 to $156 sometime "prior to August of 2014," and it increased again to $277 in February of 2015.

15

She stated she notified Anthony of the increases but he did not pay them.

Anthony argues on appeal that the trial court did not err in denying Christine's claim for increased premium amounts because the OAG's live petition stated that he had no medical support arrearage as of January 18, 2017. He argues that this constituted a judicial admission that he owed nothing for the increased premium costs. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (stating that a judicial admission "must be a clear, deliberate, and unequivocal statement" and "occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary").

We disagree. The OAG's live petition alleged:

> The Divorce Decree . . . requires [Anthony] to pay the increased cost of group health insurance available to the children through [Christine]'s employer on presentation of proper proof. The insurance premiums for the childrens' insurance has in fact increased from $135.00/mo. to $156.00/mo. in December, 2013, and then again to $277.00/mo., beginning in March 2015, and [Christine] has provided [Anthony] reasonable notice and proof of the increase. Despite this, [Anthony] has failed and refused to pay the increase in the total amount of $5[,]285.00. If the court offsets this balance with the overpaid balance in paragraph 8 above [referring to overpaid child support], the remaining balance is $3[,]490.15. [Christine] requests the court to enter judgment against [Anthony] for this amount and to order it paid and enforced as additional medical support.

Though the petition asserted that Anthony had no medical support arrearage, this paragraph gave him "fair notice" that a judgment for the increased premium costs would be sought. *See* TEX. R. CIV. P. 47(a). By alleging in its petition that Anthony had no "medical support arrearage," the OAG was arguably merely recognizing that Anthony had paid the $135 per month for the children's insurance premiums as originally required by the decree. It was not a "clear, deliberate, and unequivocal statement" that he owed

16

nothing for increased premium costs under the above-quoted paragraph of the decree. *See id.*

Anthony does not direct us to any evidence in the record, and we find none, controverting Christine's testimony that she notified him of the increased premiums, nor does he dispute the amount Christine alleges is due. We conclude the trial court abused its discretion in denying the OAG's request for a judgment awarding Christine $5,285 in health insurance premiums.

Christine's first issue is overruled in part and sustained in part as set forth above.

## C. Offsets to Future Child Support Obligation

By her second issue, Christine contends that the trial court abused its discretion by granting Anthony $14,950.40 in offsets toward his future child support obligations. She argues that "[i]t is unclear what amounts the court calculated as 'credits' or by what legal basis the court could conclude that [Anthony] was entitled to an 'offset' and a 'credit.'"

Anthony alleged in his live pleading that he had made $8,820.60 in direct tuition payments for the benefit of the parties' son between August of 2014 and April of 2015, and he asked for an offset in that amount to any child support arrearage or future child support obligation. Anthony further alleged that, by executing the "Accord and Satisfaction" agreement on October 12, 2012, Christine waived the child support arrearage that existed as of that date, which he claimed was $1,710.

At the 2018 hearing, the OAG's counsel conceded that the arrearage due as of October 12, 2012 was in fact $3,760. Anthony then testified that he made $7,852.20 in

17

direct tuition payments for the benefit of the parties' son,[6] and he asked for that amount to be credited to him as excess support payments.[7] The final judgment found that Anthony made $8,820.60 in direct tuition payments and that the arrearage at the time of the "Accord and Satisfaction" agreement was $3,760. Nevertheless, the court granted Anthony an offset of $14,950.40, which is $2,369.80 more than the combined total of Anthony's direct tuition payments and the arrearage purportedly waived under the "Accord and Satisfaction" agreement.[8] The offset was applied by reducing Anthony's monthly amount due by $311.46 for forty-eight months.

A trial court is statutorily permitted to grant offsets to a child support obligation only under limited circumstances. Family code § 154.012, entitled "Support Paid in Excess of Support Order," states:

(a) If an obligor is not in arrears and the obligor's child support obligation has terminated, the obligee shall return to the obligor a child support payment made by the obligor that exceeds the amount of support ordered, regardless of whether the payment was made before, on, or after the date the child support obligation terminated.

(b) An obligor may file a suit to recover a child support payment under Subsection (a). If the court finds that the obligee failed to return a child

---

[6] Anthony testified at the hearing that he was ordered in August 2014 to pay private school tuition. However, we reversed this portion of the August 2014 order because there was no evidence showing "something special that makes the particular child need or especially benefit from some aspect of non-public schooling." See Troiani v. Troiani, No. 13-14-00630-CV, 2016 WL 4702685, at *4 (Tex. App.—Corpus Christi–Edinburg Sept. 8, 2016, no pet.) (mem. op.) (quoting In re M.A.M., 346 S.W.3d 10, 17 (Tex. App.—Dallas 2011, pet. denied) ("To impose child support beyond the [statutory] guidelines, the record must contain evidence of the 'proven needs' of the child.")).

[7] Anthony also testified that he made several thousand dollars in mortgage payments for Christine's residence which were not required by the decree; however, the trial court sustained the OAG's objection to Anthony's testimony in this regard because he had not claimed those payments in his pleadings.

[8] Neither the record nor the briefs reveal why the offsets in the final judgment differ from the amounts testified to by Anthony. Because we will conclude that the trial court lacked authority to award any offsets toward Anthony's future child support obligation in this case, we need not address the discrepancies.

support payment under Subsection (a), the court shall order the obligee to pay to the obligor attorney's fees and all court costs in addition to the amount of support paid after the date the child support order terminated. For good cause shown, the court may waive the requirement that the obligee pay attorney's fees and costs if the court states the reasons supporting that finding.

Tex. Fam. Code Ann. § 154.012.   In this case, it is undisputed that Anthony's child support obligation has not terminated.   Accordingly, § 154.012 is inapplicable and could not have permissibly formed a basis for the award of offsets in this case.   *See id.*   Family code § 154.014, entitled "Payments In Excess of Court-Ordered Amount," provides:

> If a child support agency or local child support registry receives from an obligor who is not in arrears a child support payment in an amount that exceeds the court-ordered amount, the agency or registry, to the extent possible, shall give effect to any expressed intent of the obligor for the application of the amount that exceeds the court-ordered amount.

*Id.* § 154.014(a).   Here, the tuition payments which Anthony seeks credit for were made directly to the school, not through a child support agency or local child support registry. And there is no evidence that Anthony "expressed intent" for any overpayments to offset his future child support obligation.   Thus, § 154.014 also could not have authorized the trial court's award of an offset.   *See id.*   Finally, there was no allegation that Anthony owed child support arrearages, and Anthony has never asserted any of the affirmative defenses to enforcement of child support set forth in family code § 157.008; therefore, an offset was also impermissible under that section.   *See id.* § 157.008(d).[9]

---

[9] Section 157.008, entitled "Affirmative Defense to Motion for Enforcement of Child Support," provides:

(a) An obligor may plead as an affirmative defense in whole or in part to a motion for enforcement of child support that the obligee voluntarily relinquished to the obligor actual possession and control of a child.

(b) The voluntary relinquishment must have been for a time period in excess of any court-ordered periods of possession of and access to the child and actual support must have

19

Anthony argues that the trial court nevertheless had authority to order offsets to his future child support obligations under the family code provision that child support may be modified if "the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition . . . ." *Id.* § 156.401(a)(1)(A). But he does not direct us to any evidence in the record showing any material and substantial change in circumstances for any party, and Anthony did not allege a change of circumstances in his pleadings. In any event, the final judgment makes clear that the trial court did not reduce Anthony's future monthly child support payments on the basis of changed circumstances; instead, it did so in order to give him credit for the $14,950.40 in offsets as described above.

We conclude that the trial court lacked statutory authority to grant any offsets to Anthony's future child support obligation. The family code allows for offsets to child support arrearages, *see id.* § 157.008(d), and excess child support paid may be recouped

---

been supplied by the obligor.

(c) An obligor may plead as an affirmative defense to an allegation of contempt or of the violation of a condition of community service requiring payment of child support that the obligor:

    (1) lacked the ability to provide support in the amount ordered;

    (2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed;

    (3) attempted unsuccessfully to borrow the funds needed; and

    (4) knew of no source from which the money could have been borrowed or legally obtained.

(d) An obligor who has provided actual support to the child during a time subject to an affirmative defense under this section may request reimbursement for that support as a counterclaim or offset against the claim of the obligee.

(e) An action against the obligee for support supplied to a child is limited to the amount of periodic payments previously ordered by the court.

TEX. FAM. CODE ANN. § 157.008.

20

after the child support obligation has terminated. *See id.* § 154.012. But, in the absence of materially and substantially changed circumstances, the family code does not allow a future child support obligation to be reduced on the basis of past direct overpayments by the obligor. *See In re B.S.H.*, 308 S.W.3d 76, 81 (Tex. App.—Fort Worth 2009, no pet.) ("To construe section 154.012 to automatically make any increased support payment an advance payment against future obligations, would be contrary to the common law principle that an obligor may voluntarily provide additional support for his or her child.").

Christine's second issue is sustained.

## D. Failure to Allow Rebuttal

By a multifarious third issue, Christine argues that the trial court abused its discretion, violating her right to due process, by "failing to allow her to rebut" Anthony's testimony during the March 21, 2018 hearing. She cites several instances in the record when she claims the trial court denied her the opportunity to testify and "failed to allow" her attorney "to participate in the hearing." Christine does not, however, support this issue with references to relevant authority. Accordingly, we overrule the issue as inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

## III. CONCLUSION

We reverse the trial court's judgment denying the OAG's request for an increase in Anthony's current child support obligation. We remand to the trial court for a new trial on that issue.

We also reverse the trial court's judgment insofar as it denied the OAG's claim for a judgment against Anthony for the increased cost of the children's health insurance

21

premiums.   We remand with instructions to grant that request and for further proceedings consistent with this opinion.

Finally, we reverse the trial court's award of offsets to Anthony's future child support obligation.   We render judgment that Anthony take nothing by way of his claim for such future offsets.

The remainder of the trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed the
24th day of October, 2019.